UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

NOV – 7 2022

RECEIVED

No. 22-5143

United States Court of Appeals for the District of Columbia

William Mitchell Pakosz

        Appellant

    v.

Antony L. Blinken, in his official Capacity as Secretary of State, the United States Department of State, the United States of America

        Appellees

Michelle Boulton and Rick Dale Hollingsworth,

        Appellants

Appeal from the United States District Court for the District of Columbia
Case No 1:19-cv-02316-RC
The Honorable Rudolph Contreras

**Appellant Rick Dale Hollingsworth Brief**

(Unrepresented)

William Pakosz, et al. v. Antony Blinken, et al., Case No. 22-5143, D.C. Ct. App.

## Certificate Regarding Oral Argument

I request oral argument if I am able to find an advocate certified to practice

law in the Court of Appeals, D.C. Circuit.  This case presents important

jurisdictional and constitutional questions addressing when citizens and pro se

complainants may pursue claims against state official for violating their

constitutionally protected freedoms and the means available for the constitutionally

guaranteed due process and redress of government especially where malevolent

government officers hide their identities behind agency office titles.  If an advocate

is found, oral argument is vital to bringing clarity to the most significant issues of

law as related to the facts and process of the case and controversy to assist the

Court in establishing justice on appeal.  I do not know of anyone yet who will take

my case.

Rick Dale Hollingsworth
Appellant, The First Substitute of William Pakosz
14930 Greenbrier Lane
Homer Glen, IL 60491

Table of Contents

JURISDICTIONAL STATEMENT ........................................................... 1

STATEMENT OF ISSUES TO BE RAISED .......................................... 2

      The Appeal Presents A Number of Issues .......................................... 2

      ¶4.  Damages Available, Either Expressely Stated or Inferred ........................ 2

      ¶5.  Damages Available With Respect To Defendant Named ......................... 3
            With The Pseudonym "Co-Conspiritors

      ¶6.  Damages Available For New Violations of Law During Litigation ......... 4

STATEMENT OF THE CASE ................................................................... 5

A.    Nature of the Case ............................................................................... 5

B.    Conflict Between Pakosz's Religious Belief and Governmental Practice ........ 7

C.    General Summary of the Litigation ................................................... 10

D.    First Government Motion To Dismiss ............................................... 11

E.    The Court Process Is Polluted .......................................................... 12

ARGUMENT .......................................................................................... 21

RELIEF ................................................................................................... 29

SUMMARY ............................................................................................. 30

Signature Block ...................................................................................... A-1

Certificate of Compliance ....................................................................... A-2

Table of Authorities

United States Constitution

    Article III..................................................................................................3, 6

    First Amendment.........................................................................1, 5, 10, 12, 21

    Fifth Amendment ................................................................1, 10, 12, 17, 21, 28

    Ninth Amendment...............................................................................1, 10, 21

United States Supreme Court

    *Carey v. Piphus* ...................................................................................28
        435 U.S. 247 (1978)

    *Gill v. Whitford* ...................................................................................25
        585 U.S. ____ (2018)

    *Holt Civic Club v. City of Tuscaloosa* ...............................................24
        439 U.S. 60 (1978)

    *Rosden v. Leuthold*..............................................................................25
        274 F.2d 747, 107 U.S. App. D.C. (1960)

    *Spokeo, Inc. v. Robins* ........................................................................25
        578 U.S. 330, 338 (2016)

    *Tanzin v. Tanvir* .........................................................................3, 7, 25, 29, 30
        592 U.S. ____ (12/10/2020)

    *Uzuegbunam v. Preczewski*....................................2, 3, 7, 25, 26, 27, 28, 29, 30
        592 U.S. ____ (3/8/2021)

United States Court of Appeals / Circuit Court

    *Almana v. United Airlines, Inc.*..........................................................2
        851 F.3d 1060, 1074 (11th Cir. 2017)

*David v. Romney* ........................................................................24
    490 F.3d 1360, C.A.Pa. (1974)

*Fielding v. Brebbia* ....................................................................22
    399 F.3d 1003, 130 U.S. App. D.C. 270 (1968)

*Haynes v. Hooters of Am. LLC* ....................................................2
    893 F.3d 781, 784, 11th Cir., (2018)

*Pakosz v. Blinken* .......................................................................2
    22-5143, Doc. 1958987

*Webb v. Portland Mfg. Co.* .....................................................26, 27
    29 F. Cas. 506 (CC Me. 1838)

*Whipple v. Cumberland Mfg. Co.* ................................................27
    29 F. Cas. 934 (CC Me. 1843)

United States District Court

*Bergeson v. Dilworth* .................................................................24
    738 F. Supp. 1361, D. Kan. (1990)

*Carmichael, et al. v. Pompeo, et al.*.................................1, 10, 29, 30
    U.S. Dist. Ct., D.C., 1:19-cv-02316 (March 25, 2022, unpublished)

*Carmichael, et al v. Pompeo, et al*..............................................12
    486 F. Supp. 3d. 360 (D.D.C. Aug. 28, 2020)

*Liquid Carbonic Corporation v. Goodyear Tire & Rubber Co.*................23, 24
    38 F. Supp. 520 (D. Ohio, 1941)

*Miller Brewing Co. v. Acme Process Equipment Co.* .......................23
    148 F. Supp. 41, (D.D.C. 1957)

State Courts

*Hecht v. Harrison*.......................................................................28
    5 Wyo. 279, 40 P. 306 (1895)

*Parker v. Griswold* ............................................................................27
    17 Conn. 288 (1845)
*Reid v. Johnson* ...............................................................................28
    132 Ind. 416, 31 N.E. 1107 (1892)

Foreign Courts Cited By The U.S. Supreme Court

*Ashby* .............................................................................................29
    2 Raym. Ld., 92 Eng. Rep.

*Barker v. Green* ...............................................................................26
    2 Bing. 317, 130 Eng. Rep. 327 (C.P. 1824)

*Dods v. Evans* ..................................................................................26
    15 C. B. N. S. 621, 143 Eng. Rep. 929 (C. P. 1864)

*Hatch v. Lewis* .................................................................................26
    2 F. & F. 467, 175 Eng. Rep. 1145 (N.P. 1861)

*Marzetti v. Williams* ....................................................................26, 27
    1 B. & Ad. 415, 109 Eng. Rep. 842 (K. B. 1830)

Law Review Publications

*Commentaries on the Law of Agency* ...............................................27
    § 217, p. 211 (1839)

D. Dobbs .........................................................................................28
    *Law of Remedies* § 3.3(2) (3d ed. 2018)

1 T. Sedgwick, ..............................................................................28
    *Measure of Damages* 71, n.a. (1880)

United States Code

5 U.S.C. § 552a ...............................................................1, 6, 11, 12, 15, 23
    *Privacy Act*

5 U.S.C. 701-706 ..............................................................................11

*Judicial Review*

8 U.S.C. § 1185 ................................................................................................. 7
*Travel Control of Citizens and Aliens*

18 U.S.C. § 241 ........................................................................................... 1, 11
*Conspiracy Against Rights*

18 U.S.C. § 241 ........................................................................................... 1, 11
*Federally Protected Activities*

22 U.S.C. § 2714a(f) ......................................................................................... 11
*Revocation Or Denial Of Passport In Case Of Individual*
*Without Social Security Account Number*

22 U.S.C. § 2721 ................................................................... 1, 10, 11, 12, 22
*Impermissible Basis for the Denial of Passports*

28 U.S.C. § 1291 ............................................................................................ 1, 2
*Final Decisions of District Courts*

28 U.S.C. § 1292 ............................................................................................ 1, 2
*Interlocutory Decissions*

42 U.S.C. § 408 ........................................................................................... 1, 11
*Penalties*

42 U.S.C. § 1983 ................................................................................................. 1
*Civil Action For Deprivation of Rights*

42 U.S.C. § 2000bb .......................................................... 1, 8, 10, 11, 12, 17, 22
*Religious Freedom Restoration Act*

44 U.S.C. § 3512 ................................................................................................. 6
*Paperwork Reduction Act, Public Protection*

Federal Rules of Appellate Procedure

Rule 4 (a)(1)(B) ................................................................................................. 2
*Appeal As of Right*

Rule 28(4)(A)-(D) .............................................................................................. 1
*Briefs*

Federal Rules of Civil Procedure

Rule 12(b)(1) .................................................................................................... 11
*Lack of Subject Matter Jurisdiction*

Rule 12(b)(6) .................................................................................................... 11
*Failure to State a Claim Upon Which Relief Can Be Granted*

Rule 15(a)(2) ...................................................................................................... 3
*Amended and Supplemental Pleadings*

Rule 16(b) ........................................................................................................ 13
*Pretrial Conferences - Scheduling*

Code of Federal Regulations

22. C.F.R. § 51.26 ............................................................................................ 21

U.S. Passport Policies, Procedures and Forms

8 FAM 402.1 ............................................................................................... 20, 21
*Foreign Affairs Manual*

Form DS-11 ........................................................................................................ 7
*Application for a U.S. Passport*

Form DS-82 ............................................................................................ 7, 19, 20, 27
*U.S. Passport Renewal Application for Eligible Individuals*

End Notes

Constitution of Virginia, Article 1, Sect. 16 ..................................................... 30
*Free Exercise of Religion; No Establishment of Religion*

*David Alan Carmichael v. United States* .......................................................... 30
  298 F.3d 1367 (Fed. Cir. Aug. 2002) ; 66 Fed. Cl. 115 (2005)

## JURISDICTIONAL STATEMENT

1.    Pursuant to Rules 28(4)(A)-(D):  September 27, 2019, Pakosz joined the case of *Carmichael v. Pompeo* in the United States district court, District of Columbia, 1:19-cv-02316 (A., A-1, p. 3 / ECF 6).  Pakosz's complaint is a civil suit in the jurisdiction of the district court regarding injuries to the Appellants by United States government officers acting under the color of law in violation of the First, Fifth, and Ninth Amendments as well as 42 U.S.C § 2000bb, 42 U.S.C. § 1983, 22 U.S.C. 2721, the Privacy Act 5 U.S.C. § 552a, 42 U.S.C. § 408, 18 U.S.C. § 241 and 245.  The Secretary of State, the Department of State, and the United States are the Appellees in an official capacity, along with malevolent perpetrators not in their official capacity who were unable to be named when the complaint was filed..  The district court had original jurisdiction regarding the natural persons of the respondents, in or out of their official capacity, the artificial persons of the United States, and the United States Department of State.

2.    Appellate jurisdiction exists under 28 U.S.C. § 1291 or § 1292.  On March 25, 2022, the district court granted the defendants' (Appellees') motion to dismiss regarding the Plaintiffs (Appellants) Pakosz who is deceased, and denied the petition of Rick Dale Hollings (and David Alan Carmichael as alternate) to act as Pakosz's substitute (A. A-2, pp. 20-22, ECF / 124, Dist. Ct. Order, 3/25/22; A. A-3, pp. 23-55, ECF 125, 3/25/22 Opinion).  The claims of Pakosz were disposed

1

as final, in so many words to be moot or not judiciable.  On May 18, 2022, the

Plaintiffs filed a timely notice of appeal from the district court's March 25th order

pursuant to Rule 4(a)(1)(B) (A. A-1, p. 16, ECF 132).  The D.C. Circuit ruled on

August 11, 2022 (Cir. Ct. 22-5143, Doc. 1958987) that Plaintiffs Boulton and

Pakosz (with Hollingsworth filing as substitute) met the threshold of finality of 28

U.S.C. § 1291 or applied as a collateral decision as required by 28 U.S.C. § 1292.

Two other Plaintiffs/appellants' appeals were found to not satisfy 28 U.S.C. § 1291

or § 1292, and are proceeding in the district court on the government Defendants'

motion to dismiss for mootness (A. A-1, p. 18, ECF 140).

3.    This Court reviews dismissal for lack of jurisdiction *de novo*, and

mootness *de novo*, *Haynes v. Hooters of Am., LLC,* 893 F.3d 781, 784 (11th Cir.

2018), and denial of leave to amend the complaint for abuse of discretion. *Almana*

*v. United Airlines, Inc.*, 851 F.3d 1060, 1074 (11th Cir. 2017).

## STATEMENT OF ISSUES TO BE RAISED

**The Appeal presents (number) issues:**

4.    **Damages Available, Either Expressly Stated or Inferred** - During

litigation, the U.S. Supreme Court declared the availability of damages as

appropriate relief under the Religious Freedom Restoration Act, ie. *Uzuegbunam v.*

*Preczewski*, 592 U.S. _____ (3/8/2021) and *Tanzin v. Tanvir*, 592 U.S. _____ (

12/10/2020).  Those principles where not known by Pakosz when he joined the

2

complaint.  Under Fed. R. Civ. P. 15(a)(2), district courts "should freely give leave [to amend a complaint] when justice so requires."  There is enough in the complaint to infer compensatory, nominal and exemplary money damages, depending on the culpability of each defendant.    Did the district court:

   a)  Abuse its discretion in dismissing Pakosz's substitute, Hollingsworth, on the basis of its saying no damages were available for Pakosz?

   b)  Error in law, and clearly error as to facts alleged, construing that Pakosz did not make a claim sufficient for *Uzuegbunam v. Preczewski* and *Tanzin v. Tanvir* to apply to his case where the district court said that there was no Article III standing?

   5.  **Damages Available With Respect To Defendants Named With The Pseudonym "Co-Conspiritors.** -  Pro se Pakosz brought claims for damages scattered in the complaint.  On the government's motion to dismiss, courts must construe the complaint broadly and in the plaintiffs' favor.  Yet, the district court ruled that there were no damages available.  The district court ignored Pakosz's claims that "co-conspirators" meant that there were defendants liable under their individual capacity since the nature of their actions could not be in an official capacity.  The liable defendants were not able to be named at the time of the filing since passport denial's came in the form of agency office names (ie. Bureau of Consular Affairs, Passport Service, Office of Legal Affairs and Law Enforcement

Liaison), and were referred to in the complaint as "co-conspirators."  Did the
district court:

    a)  Error as a matter of law regarding its interpretation of the law, construing
the complaint to exclude defendants as not in their official capacity?

    b)  Commit clear error as to fact saying that the complaint did not reach
damages liability to those who could not be particularly named because their
names were hidden by the government?

    c)  Abuse discretion where it completely ignored the Appellants' declarations
regarding their meaning of their words relating to those not in official capacity?

    d)  Error in law, clearly error as to facts, and abuse discretion dismissing as
moot Pakosz's right to seek money damages from co-conspirators?

    e)  Abuse its discretion where it gave no opportunity for Pakosz to amend the
complaint to clarify their meaning of the term co-conspirators?

    f)  Abuse discretion where it gave no opportunity for Pakosz to amend the
complaint to particularly name Kristia Watkins, Jonathan Rolbin, (discovered
by virtue of their declarations), at a minimum who are personally liable for
appropriate damages relief?

    6.  **Damages Available For New Violations of Law During Litigation** -
Subsequent to the ruling in Aug. 2020**, there were new violations of law by those
acting under the color of law**, who had an obligation to approve Pakosz's passport

4

renewal application and issue the passport as soon as the district court ruled against

the government's motion for dismissal.  They then used their control on the

passport issuance as bait to try to get Pakosz to abandon the object of his lawsuit.

Did the district court:

a)  Error in law and abuse discretion where it denied Hollingsworth the right to

substitute for Pakosz for those pecuniary damages due Pakosz from the

malevolent government agents, such as Scott A. Miller, who acted under the

color of law to exact another unlawful denial of a passport to Pakosz?

c)  Is the substitute able to take facts that emerged during the case, and exercise

due process through discovery to identify the lawless actions of the perpetrators

under-the-color-of-law who committed the new offences against Pakosz, so

that Hollingsworth may to seek damages for Pakosz and his survivors?

## STATEMENT OF THE CASE

### A.      Nature of the Case

7.    This is a case of first impression affecting the rights of Pakosz and others

who apply for passports requesting accommodation for religion.  The Primary

grievance is that officers of the United States willfully, knowingly, intelligently,

and criminally-negligently flouted, in hostility to Pakosz and his religion, and so

violated: the passport statute prohibiting the denial of passports for things protected

by the First Amendment; due process laws; and law protecting the complainants in

5

their rights of religion, among other things.  Pakosz has Article III standing where the malevolent actors injured in Pakosz's right to travel, under false arrest and confinement within the borders of the United States; among other traceable injuries in violation of the Unites States Constitution and the laws of the United States.

8.    Under the color of law, the malevolent actors denied Pakosz a passport initially until such time as he would recant his activity of religion.  Then, they falsified statements and made frivolous claims during litigation to unreasonably and malevolently delay the passport renewal that they knew was due Pakosz. Notwithstanding the district court ruling that the Appellees had unlawfully denied Pakosz's passport, the Appellees challenged Pakosz to act in a way that would abandon his standing in the litigation, holding the renewal of his passport as a carrot on a stick instead of issuing it as they had a duty to do.  It was aided and abetted by the district court.  With a false promise of someday renewing Pakosz's passport without violating his rights under the laws protecting religion, they used that promise as the basis to move that Pakosz's case was moot.  They used a new unlawful means to deny his passport renewal, violating his rights under the U.S. Constitution, the Privacy Act, and the Paperwork reduction Act.

9.    This case has elements of both cases recently decided by the U.S. Supreme Court regarding deprivation of individual rights under the color of law; where the government claims the reversal of their policy moots the case against the

6

bad conduct of officers, *Uzuegbunam v. Precewski* and *Tanzin v. Tanvir*. Pakosz's initial pro se complaint had scattered claims for monetary relief. At the time of the complaint, *Uzuegbunam* and *Tanzin* were not known by Pakosz. During the litigation, while he was alive, Pakosz alerted the court to those cases and notified the court that there needed to be both discovery and a subsequent opportunity to amend the complaint to apply the rules of those cases to the liability of those acting under the color of law whose identities had so far been hidden by the government.

10. Pakosz died while the Appellants were in their second phase of denying his passport. His son in law, Rick Dale Hollingsworth moved to substitute Pakosz in order to see the case through to judgment and payment of damages by those who are liable to Pakosz and his estate (ECF 113). The district court dismissed Hollingsworth's motion to substitute on the basis that dead people don't get passports and there are no damages available (A. A-3, p.31 / ECF 125 p. 9).

**B. Conflict Between Pakosz's Religious Belief and Government Practice**

11. The law of the United States at 8 USC §1185 says "…it shall be unlawful for any citizen of the United States to depart from or enter, or attempt to depart from or enter, the United States unless he bears a valid United States passport."

12. The U.S. passport application/renewal forms, DS-11 and DS-82 state:

> "Failure to provide information requested on this form, including your social security number, <u>may</u> result in significant processing delays and/or the denial of your application" (A. A-4, p. 86 / ECF 51, ¶ Disclosure) (Emphasis added).

7

13.  Pakosz obtained a passport in Dec, 2008, without identifying with a SSN but submitting a statement regarding his religious belief and activity.  The passport form warned that the application may be delayed or denied for not providing a SSN (**A. 4**, pp. 165-166, Complaint Amended, ¶¶ 53-54. / ECF-51, pp. 17-18).

14.  As a matter of religion,[i] Pakosz could not identify himself with a Social Security Number (SSN).  It is the number of the beast for which the Bible has promised a reward for those who foresake it. Pakosz intended to make a pilgrimage to a formal ceremony in Poland to celebrate the sacrifices of his family made in fighting as partisans against the Nazis in World War II.  In what he believed was sufficient time to get his passport renewed for his journey, beginning August 16, 2017, Pakosz made several attempts to obtain a passport.  He placed "Religious Prohibition 42 USC 2000bb" in the block 5 of the form to not identify with a SSN.  Filed his forms with letters requesting religious accommodation.  Those and other letters he intended to be seen by the Secretary of State (A. A-5, pp.150-151, 154-155, 156-157, 158-162, 165-169, 170-171, 172-173,176-179, 180-197, 204-219, 222-223, 224-225, 228-231 / ECF 53, pp. 31-32, 35-36, 37-38, 39-43, 46-50, 51-52, 53-54, 57-60, 61-78, 85-100, 103-104, 105-106, 109-112).

15.  Unnamed officers, cloaked in department titles rather than names, sent responses to Pakosz completely ignoring his request for religious accommodation.  They asked him to declare under oath that a SSN had never been issued for him (A.

8

A-5, pp. 148-149, 152-153, 174-175, 220-221 / ECF 53, pp. 29-30, 33-34, 55-56, 101-102)  On one of the government-provided affidavit forms, Pakosz explained his not identifying with a SSN for reasons of religion (A. A-5, p 193 / ECF 53, p. 74).  A timeline of his correspondence was filed in the district court (A. A-5, pp. 140-144 / ECF 53, pp. 21-25).  Most of his correspondence was unanswered.

16.  Pakosz contacted his friend, minister of the gospel, David Alan Carmichael who had won a case on a similar subject.[ii]  Pakosz gave Carmichael power of attorney as a Good Samaritan to communicate to the agency for Pakosz (A. A-4, p. 62, ¶ 22).  Carmichael (hereinafter "Pakosz's agent"), had a conversation with an agency officer, Christine McClean, Law Enforcement Liaison Division (*Id.* ¶25).  McClean said that the agency had no discretion but to deny a passport for not identifying with a SSN (*Id.* ¶ 26).  Pakosz's agent responded reminding McClean of the laws protecting religious freedom and that the passport form's use of the term "may" meant that discretion did apply.  A transcript of the conversation is recorded in the amended complaint (A. A-4, pp. 93-96 / ECF pp. 38-41).  McClean explained that there was no process for religious accommodation, and that the letter gone to the proper place when asked if it had made it to the Secretary of State. (*Id.* bottom of last page)  That proper place should have been Secretary Pompeo but that delivery had likely not occurred.

17.  Pakosz and several other people contacted their Congressional legislators

and the White House asking for assistance (*Id.* ¶ 31). The agency responded only to Carmichael regarding the White House correspondence, saying in so many words that relief was not available (*Id.* ¶ 34). Seemingly in reaction to White House correspondence, the agency sent a notification to Carmichael that his passport had been revoked for not providing a SSN  (*Id* ¶ 33). Carmichael filed suit in the district court, 1:19-cv-2316 (A. A-1, pp. 1-2, ECF 1). Pakosz and Carmichael moved to join Pakosz September 2019 (A. A-1, p. 3, ECF 6).

## C.    General Summary of The Litigation

18. Among other things, the complaint alleged that co-conspirators violated Pakosz rights under the First, Fifth and Ninth Amendments, as well as the statutes protecting religion, 42 U.S.C. § 2000bb, et seq., and the prohibiting the denial of passports based upon the Appellants' activities of religion, 22 U.S.C. § 2721. The district court ignored the substance of many, if not all, filings of Pakosz. Rather than rule on the substance of Pakosz motions, or address his substantive challenges to the government's motions, the court just tracked the sophistry of the government despite the complete lack of evidentiary support; and in many instances despite the clearly contradictory evidence supplied by Pakosz.

19. The original complaint that Pakosz joined reached for damages but could not name those called co-conspirators, not being able to know who they actually were without discovery. **Pakosz's motions for discovery were denied** and the

10

facts of his case never adjudicated.

**D)    First Government Motion To Dismiss Fails**

20.    The Appellees moved for dismissal on Rule 12(b)(1) and (6), and in

the alternative for summary judgment (A. A-1, p. 4, ECF 24).  In their motion, they

admitted that they issue passports for those who declare that a SSN has never been

issued on their behalf (A. B-6, p. 232 / ECF 24-1, p. 9) a mere technical reason

rather than a religious one.  They also acknowledged that "Plaintiffs seek more

than $500,000 in money damages ( A. B-7, p. 233 / ECF 24-1. p 1).  Pakosz

responded (A. A-1, p. 4-5, / ECF 27), pointing out that there were material facts in

dispute, the record had not been provided to the court pursuant to 5 U.S.C §§ 701-

706, the passport law 22 U.S.C. § 2721; the RFRA 42 U.S.C. § 2000bb; the

Privacy Act 5 U.S.C. 552a; the Social Security Act at 42 U.S.C. § 408; as well as

18 U.S.C. § 241 and § 245 expressly prohibit the conduct of the conspirators; and

the 22 U.S.C. 2714a(f) statute used as an excuse by the government was

unconstitutional.  Pakosz also filed a cross-motion for Declaratory Partial

Summary Judgment, Motion for Injunction on the First Cause of Action (A. A-1, p

5, ECF 27, 28).  In that document and its attachments, Pakosz cited the need for

discovery so that individuals can be named and be individually held liable in their

private capacity (A. B-11, p 289 / ECF 27, p. 17 & A. B-12, pp. 290-293 / ECF 27-

2, pp. 6-7, 12-13)

21.   The district court ruled that Pakosz had standing as a matter of the

RFRA, the Privacy Act, and the Fifth Amendment (A. B-8, p. 234 / ECF 44; A. B-

9, pp. 235-258) *Carmichael, et al. v. Pompeo, et al.* 486 F. Supp. 3d. 360 (D.D.C.

Aug. 28, 2020).  The government did not demonstrate a compelling interest to

demand a SSN at the cost of a passport.  It wrongly treated the SSN as mandatory

when the application information indicated it was voluntary.  It did not provide the

right to due process protected by the Fifth Amendment.  The district court

dismissed the other counts, including the first cause of action, violation of 22

U.S.C. § 2721 denial of passport prohibited where belief, activity, etc. protected by

the First Amendment.  Pakosz filed objections to the ruling where it was in error,

eventually filing a timely motion for relief in accordance with the rules (A. B-10,

pp. 259-288 / ECF 247).  There he objected to the dismissal of counts that related

to damages liability to hidden actors and noted the necessity of discovery, p. 6,

ECF 47, particularly relevant are ¶¶46-49, pp. 20-21 of 24 (A. B-10, pp. 282-283).

**E)    The Court Process Is Polluted**

22.   Immediately after the district court recognized his standing, Pakosz

renewed his efforts to obtain discovery by a scheduling conference after his motion

to compel discovery was denied many months earlier (A. A-1, p. 6, ECF 40).

Pakosz sent a thoroughly developed discovery proposal to the U.S. Attorney

complying with Rule 16(b) on October 20, 2020 (A. B-13, pp. 294-295 / ECF 55,

12

pp. 9-10). Pakosz, with his companions, filed an amended complaint in
accordance with those things allowed by the Court in its August 28, 2020 order (A.
A-4, pp. 56-119). The government having a Nov. 11th deadline to respond Pakosz's
motion to amend (A. A-1, p. 7, Minute Order 10/28/2020), asked for time to
conference with Pakosz to seek a voluntary remand. The court ordered a joint
status report due December 4, 2020 (*Id.*, Minute Order 11/11/2020).

23. The U.S. Attorney's communications to Pakosz about the substance and
purpose of the proposed remand contradicted that which the Attorney filed in his
motion to the court (A. B-14, pp. 296-297, ¶¶8-16 / ECF 54, pp. 2-4). Smelling a
rat, Pakosz filed substantial documents, moved for as evidence for the record,
showing how the government had no excuse to deny his passport application as a
matter of fact and law (A. A-5, pp. 120-231 / ECF 53). The documents were sent
by priority mail on December 1, 2020, three days prior to Pakosz ever seeing the
contents of the Status Report filed by the government on December 4, 2020.
Pakosz's substantive evidence and arguments preemptively exposed the frivolity of
the government's scheme to evade judicial scrutiny of Pakosz's case and to delay
the issuance of his passport under their guise of questioning his identity. (A. A-5,
pp. 123-125, ¶¶ 6-12 / ECF 53, pp. 4-6).

24. In his Status Report (A. A-1, p. 7, ECF 54), Pakosz preemptively
protested that the government's motion was: a) Not in good faith (A. B-14, p. 299,

13

¶18 / ECF 54, p. 7)  b)  Should be estopped from taking opposite opinions from

their motion for dismissal and summary judgment (*Id.* ¶¶19-20); c)  Should be

estopped from taking opposite positions about the verity of Pakosz's identity (*Id.*,

¶21); d)  Illegitimately intended "to institute a unique inquisition tailored to the

Plaintiffs under the color of questioning their identity?" (*Id.*, p6. ¶21.); e)  Should

be estopped from their opposite position that their having no discretion to provide

an in-agency appeal. (*Id.*, p. 300, ¶22 / ECF 54 p. 8).

25.  Pakosz preemptively AND prophetically argued that:  a)  The district

court had ruled that it had jurisdiction on at least two causes of action where

complete relief was not in the power or prerogative of the Defendant to provide.

(*Id.*, p. 6., ¶23.); b)  The government at that time had a duty to provide the

passports based upon that documentation which the already possessed (*Id.*, p. 6,

¶24.); c)  The government wanted to repair their case, evade judicial scrutiny,

"subject the Plaintiffs to further obstructive processes, and to have power to

interrogate without Pakosz having the power to interrogate the government's bad

actors." (*Id.*, p. 301, ¶25 / ECF 54, p. 9); d) The government was implying an

admission that laws were violated ." (*Id.*, ¶26.); e)  The issuing of passports is only

the minimum requirement and does not provide complete relief ." (*Id.*, ¶27.); f) A

final judgment against (Pakosz) would be the effect of granting the motion for

remand.  Pakosz objected particularly saying:

14

"29.    To grant the Defendants' stay and remand would be saying: '
Okay Department of State!  You win!  We will ignore that the Plaintiffs
have brought an actionable case to the court, where only the court can
provide suitable, and asked-for, remedy and relief.  We will allow you
again to make the Plaintiffs run the gauntlet of a quasi-administrative,
cloaked, application and adjudication process.  The Department of Deep
State can continue to make its own quasi-laws without the authority of
the Legislature.  It can make its own quasi-regulations without the
parental supervision of the ordinary regulation process mandated by the
Legislature.  It can operate according to its own practices that ignore
statutes protecting religion and other abuses targeted by the Religious
Freedom Restoration Act, Administrative Procedures Act and the Privacy
Act.  It can evade the scrutiny of the Secretary of State where the buck is
supposed to stop.  It can ensure that every malefactor can evade the
accountability for their actions which have tortured and tormented the
Plaintiffs for over three years.  The Plaintiffs will be denied access to
seek relief in the Court as was Plaintiff Carmichael refused access at the
door of the Courthouse for his inability to conform to the numbered-man
norm.
    30.    The greatest ill of the malevolent acts against us by the
Defendant Department of State is that they are obliterating law protecting
religion, and other fundamental laws, at the arbitrary and in our case
capricious whim of unelected government officials.  **A stay and remand
would enable their destructive addiction and exacerbate the injury
to the Plaintiffs and the public**."  (*Id.*, pp. 301-302, ¶¶. 29-30 / ECF 54
pp. 9-10) (Emphasis original)

26.  Pakosz in the same package filed his Notice and Demand "That

Defendants Show Cause By Clear And Convincing Evidence That The Actual

Identity Of Pakosz Is In Question" (A. A-5, pp. 119-231 / ECF 53).  With that

notice and demand, Pakosz submitted a copy of his letter sent to Secretary Pompeo

sent on February 20, 2019, with all its contents which included letters to the State

Department going back to 2017 and a letter to the Social Security Administration

from 1981 (*Id.*, pp, 121-123, ¶¶A-Y and "Attach. 1" pp. 127-231 / ECF 53).

Pakosz declared:  a)  None of the agency's correspondence to him ever questioned his identity (*Id.* p. 123, ¶6 / ECF 53, p. 4);  b)  The agency's ordinary procedure is to use the previously issued passport to verify identity (*Id,* ¶7);  c)  Pakosz is the same man of the previously issued passport with no changes to that information (*Id,* p. 124, ¶8 / ECF 53, p. 5);  d)  The "Defendants" . . . "have made <u>no</u> good faith allegation that there is any question regarding my true identiy or that they do not believe that I am the man that I say that I am . . . when . . . issued a passport on December 11, 2007." (*Id.,*¶9);  e) The Defendants' Attorney on November 10, 2020, said that there was no question as to the validity of (Pakosz). (*Id.,*  ¶10).

27.  Pakosz then demanded:  a)  The Defendants cease and desist from using any question of Pakosz's identity as an excuse for "delaying, remanding, staying, obstructing or in any otherwise impeding the judicial process" and the process of his passport renewal application and their obligations regarding it (*Id.,* ¶11);  b) Show by clear and convincing evidence why the "verity" of Pakosz's identity should be in question before making any allegation that they have a need to exercise a process to verify his identity (*Id.,* ¶ 12.).  Pakosz verified the documents and his statements under oath (*Id.* p. 125 / ECF 53, p. 6).  The Defendants never repudiated the stated facts that justified the notice and demand to cease and desist.

28.  (Pakosz's) Status Report contained a motion for a discovery scheduling-conference, providing a copy of the proposal sent to the government (A. A-1, p 7,

ECF 55).  That motion was ignored.

29.  Pakosz responded to the government's Status Report that promised to file a motion to remand (A. A-1, p. 7, ECF 63).  Among many substantive arguements, Pakosz complained in so many words that the court cannot force the complainants to a scheme where the wrongdoer is lawmaker, judge and executioner of the case (A. B-15, pp. 305, ¶¶12-13 / ECF 63, p. 4).  He pointed out that his case was "an Article III action against the person of the agency and its actors who violated the law, and the laws of the United States, with injury to (Pakosz's) life, liberty, and property resulting from their wrong.  The agency is not the statutory remedy provided for by the Legislature, nor do they have power to provide complete relief (citing 28 U.S.C. § 1331) (*Id.*, pp. 305-306, ¶¶15-17 / ECF 63, p. 4-5).

30.  The government filed their motion for remand on December 18, 2020 (A. A-1, p. 7, ECF 61) and Pakosz responded, December 30, 2020 (A. A-1, p. 8, ECF 65).  Among other things, Pakosz claimed that government's ploy was in bad faith, asserting a question about Pakosz's identity was frivolous and in bad faith (A. B-16, p. 307-308, ¶27 / ECF 65, p. 18-19).  Pakosz also stated that his injury from Fifth Amendment violation and RFRA claims must be adjudicated by the district court (*Id.*, pp. 309-311, ¶¶48-51 / ECF 65, pp. 25-27).  Pakosz continued to point out that the government's excuse to see if it could make and accommodation was in bad faith since they issued passports to those without identifying with a SSN for

non-religious reasons. (*Id.*, pp. 311-312, ¶¶52-54 / ECF 65, pp. 27-28). Pakosz

will be unduly prejudiced by a remand to the accused agency (*Id.*, p 312, ¶¶55-56 /

ECF 65 pp. 19-20). Pakosz summarized, "The guilty do not have a choice to use

their next sober driving event to nullify their previous DUI, especially when their

willful, intentional, negligent, and reckless violation injured someone. Stay and

remand to the Defendant is unconscionable in this case as a matter of law, fact,

equity, and morality." (ECF 65, p. 31)

31. Without responding to the merits of Pakosz's objections, the district

court granted the government's remand by minute order (A. A-1, p. 8, Minute

Order 01/20/2021)

32. Pakosz filed an objection (A. A-1, p. 9, ECF 71), and moved for

reconsideration and rescission, a stay of the remand order to consider Pakosz's

Rule 52(c) motion, and to certify the remand order for interlocutory appeal (A. A-

1, p. 9, ECF 72). In reaction, the district court ordered a status report (A. A-1, p. 9,

Minute Order, 02/26/21).

33. Pakosz responded in opposition to the status report, explaining the bad

faith actions of the government who were baiting Pakosz into their lair in such a

way as to abandon his standing in the litigation in order to get the passport which

he was already due as a matter of law on the basis of his passport renewal

application denial that prompted the litigation (A. B-17, pp. 313-324 / ECF 82)

18

Pakosz said:

> ""the Defendants status report deceptively alludes to there being some requirement for us to initiate a new action by means of a new DS-82 form. (*Id.* p. 318, ¶5 / ECF 82, p. 6)

> ""... Look at the promise of the Defendants: "...**if the Plaintiffs establish upon remand their eligibility for passports, their 2018 and 2019 passport applications will be granted and the revocation of Plaintiff Carmichael's passport will be rescinded**." (ECF 66, pp. 506) Look what the Defendants said in their March 5, 2021 status report (ECF 80): "The Department recently completed this review and **has determined that there is no need to request any additional evidence from the Plaintiffs** during the remand period. Specifically, based on Plaintiffs' prior passport submissions and court records, **the Department is satisfied with (1) the sincerity of Plaintiffs' religious beliefs; and (2) the adequacy of the citizenship and identity evidence previously submitted by each Plaintiff**." (ECF 80, ¶ 2.)"" (*Id.* p. 319, ¶6 / ECF 82, pp. 7)

> "The Defendants show, in their directions for the Plaintiffs future applications for a passport renewal, that there is no requirement for the Plaintiffs to identify themselves with a SSN. That indicates that under the circumstances, as a matter of fact and law, the Plaintiffs were not at the time of the current applications and passport, and are not now, required to identify with a SSN. "Plaintiffs are not required to identify any Social Security Number in their Form DS-82 applications and should write 'refused for religious reasons" (ECF 80, ¶3.a.)."" (*Id.* p. 319, ¶7 / ECF 82, p. 7)

34.  In his response to the government's March 5, 2021, Status Report, Pakosz cited *Uzuegbunam, et al. v. Preczewski, et al.*, saying that there is an actionable Article III case, predicting that there will be a finding of malevolence, and that appropriate relief exceeded that which is nominal (*Id.*, p. 321, ¶ 12 / ECF 82, p. 9)

35.  The government agency never sent correspondence to Pakosz regarding

what the U.S. Attorney said was happening in the quasi-remand.  The only contact
was from the U.S. Attorney by a telephone conference which Pakosz summarized
for the record with his motion to compel the issuance of his passport (A. B-18, pp.
325-328 / ECF 84-4).  The U.S. Attorney admitted that a new DS-82 form was not
necessary, nor that there was any question about Pakosz address; but said that if
Pakosz would just send a new photograph, he could have a renewed passport (*Id.*,
p. 326 / ECF 84-4, p. 2).  Having sent several photographs for renewal denials, the
ground between his house and photo store being packed in icy roadways and
walkways which had cause him an injury recently, and knowing that providing a
not-required-as-a-matter-of-law photograph would abandon his claim against the
actors of the bad-faith remand, Pakosz refused without a court order (*Id.*, p. 327, 1st
para. / ECF 84-4, p. 3) He explained that he would only provide a photograph if the
district court adjudicated his case and ordered a new photograph if required after a
finding of fact and conclusions of law. (*Id.*, 1st and 2nd paras.)

36.  The only official communication from the agency was on the eighty-
ninth day of the quasi-remand.  Scott A. Miller sent a letter telling Pakosz his
passport renewal application was denied for non-religious reasons for not
volunteering a photograph when requested (A. B-19, p. 329 / ECF 84-7, p. 2).  The
actual text of the reference cited by Mr. Miller verified that the photograph already
in the hands of Mr. Miller was sufficient according to both the Foreign Affairs

20

Manual, 8 FAM 402.1, and the Code of Federal Regulations, 22 C.F.R. § 51.26 (A.
B-20, p. 330 / ECF 84-8, p. 3).

37.   Pakosz moved to compel the government to issue the passport on April
23, 2021 (A. A-1, p. 10, ECF 84).  William Mitchell Pakosz died July, 5, 2021.
Rick Dale Hollinsworth filed to become the substitute for Pakosz after Pakosz's
death (A. A-1, p. 14, ECF 113).

38.   The district court denied Hollingsworth's petition to substitute for Pakosz
on the basis that dead people don't need passports and no damages were due. (A.
A-3, p. 31 / ECF 125, p. 9).

## ARGUMENT

39.    The Federal Rules of Civil Procedure, Rule 54(c) says, "Every other
final judgment [other than default] should grant the relief to which each party is
entitled, even if the party has not demanded that relief in its pleadings."  The
district court erroneously denied Appellant Rick Dale Hollingsworth's motion to
substitute for the deceased Pakosz where the court erroneously said that there are
no damages relief available (A. A-3. p. 31 / ECF 125, p. 9).

40.   Pakosz claimed he has Article III standing from the traceable injury he
suffered.  He was falsely imprisoned within the borders of the United States, in
Violation of the First Amendment, the Fifth Amendment, the Ninth Amendment
and against the laws of the United States Acts of Congress, Foreign Relations

21

Authorization Act, United States Public Law 102-138, Sec. 113, 105 Stat. 655,

Impermissible Basis For Denial of Passports (22 U.S.C. § 2721) , and the Religious

Freedom Restoration Act, U.S. Public Law 103-141, 107 Stat. 1488-1490 (42

U.S.C. § 2000bb, et seq.).  Pakosz had a traceable claim which included the right to

damages from individuals acting under the color of law if their identities and

particular acts are exposed by discovery. The district court erred and abused

discretion where it never allowed the discovery process to proceed.  Pakosz has yet

to have his day in court, and due process to prove the malevolent acts.

> "Court in its final judgment must grant such relief as claimant establishes
> he is entitled to receive." *Fielding v. Brebbia*, 399 F.3d 1003, 130 U.S.
> App. D.C. 270 (1968)

41.    The pro se Complaint, taken in its entirety, broadly cites relief that does

not exclude any sort of damages that are warranted by facts proven whether known

at the time of the complaint or discovered in litigation.  Pakosz remonstrated, "This

matter requires the court's declaration of law as it relates to the constitutionality of

the conduct of United States officers and agents, the guiding statutes and

regulations. The remedy required is writ of mandamus, declaratory judgment, and

injunction for protection of religion, and other relief in law and equity, and

compensation for costs and fees where allowable by statute." (A. A-4, p. 57, ¶ 5 /

ECF 51, p. 2) (Emphasis added).  Citing Parties, Pakosz continued, "and may also

be co-conspirators and agents that shall be identified or confirmed upon discovery"

(*Id.*, p. 58, ¶ 7. / ECF 51, p. 3). The jurisdictional statement included, "Damages where allowable and Further Relief" (*Id.* p. 59, ¶ 9 / ECF 51, p. 4). Pakosz cited unlawful acts of cloaked individuals who are liable for their unlawful acts under the color of law. (*Id.* p. 69 , ¶ 39; p. 87, ¶ 107-112; p. 103, ¶ 116; p. 104, ¶ 119; p. 105, ¶122; p. 106-110, ¶¶ 124, 124g-k, 125; pp. 111-112, ¶¶ 128, 130-131; p. 113, ¶ 136-137; p. 114, ¶ 139-140 / ECF 51, pp. 14, 32, 48, 49, 50, 51-55, 56-57, 58, 59) . Pakosz plead for declaratory relief which is prerequisite to a damages judgment. He sought a finding of fact and conclusions of law that would identify who acted not in their official capacity as compared to those in their official capacity (*Id.*, 114-115, ¶¶ 142-142(3) / ECF 51, pp. 59-60).

> "Relief in form of damages can be awarded even if initial pleadings in action contained only prayer for declaratory relief. *Miller Brewing Co. v. Acme Process Equipment Co.,* 464 F. Supp. 856, D.C. Wis. (19790

42. The district court erred and abused discretion where it excluded to Pakosz the discovery necessary for proof, and to expose and prove facts that support his claim, his complaint document can be amended to reach justice.

> "Traditionally, equity may adjust its relief to the proof. *Glen Falls Indem. Co. v. Golden*, D.C.D.C., 148 F. Supp. 41 (1957)

43. Pakosz demanded relief for no less than $1,000 under the theory of it being the relief provided by the Privacy Act (A. A-4, p. 116, ¶ 144 / ECF 51, p. 61). The district court erred or abused discretion where it used its theory as the basis of saying Pakosz did not plead for damages relief.

"Where a bill states a cause of action entitling complainant to equitable relief on any theory of the case, a court may grant it under a prayer for general relief, though other specific relief may be mistakenly prayed for. *Liquid Carbonic Corporation v. Goodyear Tire & Rubber Co.,* 38 F. Supp. 520, D.C. Ohio (1941)

44.   Pakosz cited facts showing he paid fees unnecessarily, a fact warranting

compensatory relief (A. A-4, p. 75, ¶62 & p. 116, ¶147 / ECF 51, p. 20 & 61)

"This rule providing that final judgment should grant relief to which party is entitled even if he has no demanded it in his pleadings applies to summary judgment." *David v. Romney,* 490 F.3d 1360, C.A.Pa. (1974)

45.   Pakosz cited other provisions for money damages including a statement,

"Provide other relief that might be known or found to be suitable, lawful, equitable

or otherwise which is in the power of the court to grant in keeping with the Federal

Tort Claims Act" (A. A-4, p. 116, ¶ 148 / ECF 51, p. 61.

"If evidence is sufficient to sustain higher award than that requested in plaintiff's pleadings, complaint is considered amended to conform to proof. *Bergeson v. Dilworth*, 738 F. Supp. 1361, D. Kan. (1990).

46.   Pakosz cited the unjust obstacle to the identification of the wrong-doers

and the particularity of their culpability in his Remonstrance to the district court

order of Aug. 28, 2020 (A. B-21, pp. 331-332, ¶¶46-49 / ECF 47, pp. 24-25).

Pakosz's not hitting the bullseye to the damages target at which he was aiming, the

object of his aim is discernable and his complaint ought not to have been

dismissed.  Whether his theories of law were correct, his damages relief is due.

"We agree with appellants that a federal court should not dismiss a meritorious constitutional claim because the complaint seeks one remedy

24

rather than another plainly appropriate one" *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60 (1978).

"The purpose of subd. (c) of this rule and rule 15(b) of these rules, applicable to retrospective amendment of the pleadings and prayer for relief in order that they may conform to the evidence adduced at trial, is to avoid the tyranny of formalism. *Rosden v. Leuthold,* 274 F.2d 747, 107 U.S. App.D.C 89 (1960)

47.    Therefore, Pakosz claim for relief in the form of damages is still alive

until his claim is adjudicated on its merits.

"At all stages of litigation, a plaintiff must maintain a personal interest in the dispute. The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings. To demonstrate standing, the plaintiff must not only establish an injury that is fairly traceable to the challenged conduct but must also seek a remedy that redresses that injury. And if in the course of litigation a court finds that it can no longer provide a plain tiff with any effectual relief, the case generally is moot. This case asks whether an award of nominal damages by itself can redress a past injury. We hold that it can." *Uzuegbunam v. Preczewski*, 592 U.S. _____ (3/8/2021) Slip Op. p. 1

""To satisfy the " 'irreducible constitutional minimum' " of Article III standing, a plaintiff must not only establish (1) an injury in fact (2) that is fairly traceable to the challenged conduct, but he must also seek (3) a remedy that is likely to redress that injury. *Spokeo, Inc. v. Robins*, 578 U. S. 330, 338 (2016); see also *Gill v. Whitford*, 585 U. S. ___, ___–___ (2018) (slip op., at 13–14)"" *Id*. p. 3

48.    The district court order of August 28, 2020, established that Pakosz's

claim established the first two elements of standing.  The remedy he sought was

not only injunctive relief, but declaratory relief and pecuniary (money) damages.

49.    Pakosz injuries were not only where he suffered a out-of-pocket-money

property injury. His injury precluded him from spending the money he intended

for a flight to Poland. Being denied a particular pilgrimage that Pakosz could

fulfill while he had the health to do so is an injury that is incalculable. But that

does not mean that it cannot warrant pecuniary relief. The Supreme Court in

*Uzuegbunam* explained nominal damages fulfill the third prong of standing.

> "Later courts, however, reasoned that every legal injury necessarily
> causes damage, so they awarded nominal damages absent evidence of
> other damages (such as compensatory, statutory, or punitive damages),
> and they did so where there was no apparent continuing or threatened
> injury for nominal damages to redress. See, e.g., *Barker v. Green*, 2 Bing.
> 317, 130 Eng. Rep. 327 (C. P. 1824) (nominal damages warded for 1-day
> delay in arrest because "if there was a breach of duty the law would
> presume some damage"); *Hatch v. Lewis*, 2 F. & F. 467, 479, 485–486,
> 175 Eng. Rep. 1145, 1150, 1153 (N. P. 1861) (ineffective assistance by
> criminal defense attorney that does not prejudice the client); *Dods v.
> Evans*, 15 C. B. N. S. 621, 624, 627, 143 Eng. Rep. 929, 930–931 (C. P.
> 1864) (breach of contract); *Marzetti v. Williams*, 1 B. & Ad. 415, 417–
> 418, 423–428, 109 Eng. Rep. 842, 843, 845–847 (K. B. 1830) (bank's 1-
> day delay in paying on a check); id., at 424, 109 Eng. Rep., at 845
> (recognizing that breach of contract could create a continuing injury but
> determining that the fact of breach of contract by itself justified nominal
> damages)." *Id.* Slip Op. p. 5

50.   Examination of the complaint reveals that citing of damages was not

artfully done. Pakosz and his fellow pro se complainants are not lawyers and were

reaching in the dark for the magic words to cross the 'T' and dot the 'I's to reach

remedy and relief. The language used and the totality of the complaint, liberally

construed, is sufficient to identify the fact that Pakosz was suing yet-to-be-

nameable individuals not in their official capacity. It is discernable that Pakosz

was reaching for a money judgment.

> Applying what he called Lord Holt's "incontrovertible" reasoning, Justice
> Story explained that a prevailing plaintiff "is entitled to a verdict for nominal
> damages" whenever "no other [kind of damages] be proved." *Webb v.
> Portland Mfg. Co*., 29 F. Cas. 506, 508–509 (No. 17,322) (CC Me. 1838).
> Because the common law recognized that "every violation imports damage,"
> Justice Story reasoned that "[t]he law tolerates no farther inquiry than
> whether there has been the violation of a right." Ibid. Justice Story also made
> clear that this logic applied to both retrospective and prospective relief. Id.,
> at 507 (stating that nominal damages are available "wherever there is a
> wrong" and that, "[a] fortiori, this doctrine applies where there is not only a
> violation of a right of the plaintiff, but the act of the defendant, if continued,
> may become the foundation, by lapse of time, of an adverse right"). *Id,* p. 6

51.    Whether or not Pakosz knew the proper language or legal theory for

damages, nominal damages are due by default.

> "Justice Story said that nominal damages are "presumed" "[w]here the
> breach of duty is clear." Commentaries on the Law of Agency §217, p.
> 211 (1839). Justice Story adopted the same position a few years later.
> *Whipple v. Cumberland Mfg. Co*., 29 F. Cas. 934, 936 (No. 17,516) (CC
> Me. 1843) (stating that it is "well-known and well-settled" that wherever
> a wrong is done to a right," at minimum "nominal damages will be
> given"). And other jurists declared that "[t]he principle that every injury
> legally imports damage, was decisively settled, in the case of <u>Ashby</u>."
> *Parker v. Griswold*, 17 Conn. *288, *304–*306 (1845) (citing many
> cases on both sides of the Atlantic, including *Webb* and *Marzetti*).
> *Id.* p. 7

52.    Like in *Uzuegbunam*, the government intended to moot Pakosz's case by

saying that some time in the future, should he file a new DS-82 passport renewal

form, the government would not violate his rights regarding religion.  That would

remove one form of injunctive relief, but it still would not cure the injury upon

Pakosz that spawned the litigation.  Pakosz complaint was not merely regarding the

violation of his religious rights, but also about the violation of his due process

rights protected by the Fifth Amendment.  They did not send him a bill for which

he could be compensated for his false imprisonment.  The injury to his liberty

rights of travel and due process warrant a judgment against all defendants, by

differing degree of pecuniary payment.  The Supreme Court in *Uzuegbunam* said

> Admittedly, the rule allowing nominal damages for a violation of any
> legal right, though "decisively settled," Parker, 17 Conn., at *304, was
> not universally followed—as is true for most common-law doctrines.
> And some courts only followed the rule in part, recognizing the a
> vailability of nominal damages but holding that the improper denial of
> nominal damages could be harmless error. Yet, even among these courts,
> many adopted the rule in full whenever a person proved that there was a
> violation of an "important right." E.g., *Hecht v. Harrison*, 5 Wyo. 279,
> 290, 40 P. 306, 309–310 (1895); accord, *Reid v. Johnson*, 132 Ind. 416,
> 419, 31 N. E. 1107, 1108 (1892) ("substantial right"). Nonetheless, the
> prevailing rule, "well established" at common law, was "<u>that a party
> whose rights are invaded can always recover nominal damages without
> furnishing any evidence of actual damage</u>." 1 *T. Sedgwick*, Measure of
> Damages 71, n. a (7th ed. 1880); see also id., at 72 (citing Lord Holt's
> opinion in Ashby). *Id.* p. 7

> That this rule developed at common law is unsurprising in the light of the
> noneconomic rights that individuals had at that time. A contrary rule
> would have meant, in many cases, that there was no remedy at all for
> those rights, such as due process or voting rights, that were not readily
> reducible to monetary valuation. See D. Dobbs, *Law of Remedies* §3.3(2)
> (3d ed. 2018) (nominal damages are often awarded for a right "not
> economic in character and for which no substantial non-pecuniary award
> is available"); see also *Carey v. Piphus*, 435 U. S. 247, 266–267 (1978)
> (awarding nominal damages for a violation of procedural due process).
> By permitting plaintiffs to pursue nominal damages whenever they
> suffered a personal legal injury, the common law avoided the oddity of
> privileging small-dollar economic rights over important, but not easily
> quantifiable, nonpecuniary rights. *Id.* p. 8

53. Pakosz, even on his deathbed, continued to stand against the wiles of the government trickery, baiting him to abandon his action that was anchored to his not-yet-to-be-approved-in-accordance-with-the-law passport renewal application. His intent was to reach judgment, in solidarity with his co-complainants, so that he might not only maintain the right but also vindicated it.

> To begin with, the cases themselves did not require a plea for compensatory damages as a condition for receiving nominal damages. Lord Holt spoke in categorical terms: "[E]very injury imports a damage," so a plaintiff who proved a legal violation could always obtain some form of damages because he "must of necessity have a means to vindicate and maintain [the right]." *Ashby, 2 Raym. Ld.*, at 953–955, 92 Eng. Rep., at 136–137. Justice Story's language was no less definitive: "The law tolerates no farther inquiry than whether there has been the violation of a right." *Webb,* 29 F. Cas., at 508. When a right is violated, that violation "imports damage in the nature of it" and "the party injured is entitled to a verdict for nominal damages." Id., at 508.  *Id.* pp. 8-9

,

54. The district court abused  discretion where it gave no opportunity for Pakosz to amend the complaint to clarify the meaning of the term co-conspirators or to appropriate the case rule of *Uzuegbunam* and *Tanvir* to claim appropriate relief now understandable by those rulings.

## RELIEF

55. Grant review, vacate the district court judgment of March 25, 2022, and make appropriate orders in law and equity to have Pakosz, by his substitute Rick Dale Hollingsworth, rejoin the litigation in the district court case no. 1:19-cv-02316 on remand. Order the district court to grant discovery and to adjudicate the

case in accordance with the rules, with the ends of justice in mind rather than the
subjective and speculative notion of efficiency.

## SUMMARY

56. After the revelation of the cases *Uzuegbunam* and *Tanvir*, and after the
opportunity to expose the hidden bad actors and their hidden bad acts by means of
discovery, Pakosz complaint can be suitably amended in the district court. None-
the-less, it is the district court's duty to grant relief on the basis of evidence which
exists to which the district court is denying access. When the window to those
facts and proof is opened, it is that evidence that shall substantiate the warrant for
damages irrespective of Pakosz's pleading.

> "Except for default judgment, prayer of complaint is irrelevant, under
> this rule governing demand for judgment, and relief depends on facts
> on the hearing or trial, not the prayer. *Equity Capital Co. v. Sponder*,
> 414 F.2d 317, C.A. Fla. (1969)

57. Pakosz's substitute, his son-in-law Rick Dale Hollingsworth, ought to as
is right under the common law as first blood or first friend be able to represent
Pakosz's cause and the money damages due Pakosz. Let him rejoin the ongoing
litigation of *Carmichael v. Pompeo[iii]*, 1:19-cv-02316 in the district court.

---

[i] Religion is defined "the duty which we owe to our creator" Constitution of Virginia, Article 1, § 16.
[ii] *David Alan Carmichael v. United States*, 298 F.3d 1367, U.S. Ct. App. (Fed. Cir. Aug. 2002); 66 Fed. Cl. 115,
U.S. Ct. Fed. Cl. (2005)
[iii] Michael Richard Pompeo is substituted by his successor in office, Antony L. Blinken.

William Pakosz, et al. v. Antony Blinken, et al., Case No. 22-5143, D.C. Ct. App.

Signature Block

My Appellant Brief is hereby respectfully submitted this _23_ day of November,

2022

Rick Dale Hollingsworth
Appellant, The First Substitute of William Pakosz
14930 Greenbrier Lane
Homer Glen, IL 60491

A-1

William Pakosz, et al. v. Antony Blinken, et al., Case No. 22-5143, D.C. Ct. App.

Certificate of Compliance

My appeal brief complies with the rules regarding format and word count, having

8,345 words according to the measurement by MicroSoft Word application.

Rick Dale Hollingsworth
Appellant, The First Substitute of William Pakosz
14930 Greenbrier Lane
Homer Glen, IL 60491

## CERTIFICATE OF SERVICE

I, Rick Dale Hollingsworth, certify that I served to the U.S. Court of Appeals, U.S. Circuit Court, District of Columbia, in the case of *Pakosz, et al., v. Blinken, et al.*, case no. 22-5143, the "Appellant Dale Hollingsworth's Brief", 8 copies.  I notified the Circuit Court and parties at:

Clerk, United States Court of Appeals
333 Constitution Avenue, N.W.
Washington, DC 20001 (By Priority Mail)

United States Attorney
United States Attorney's Office
c/o Stephen DeGenaro
601 D. Street, N.W.
Washington, D.C. 20530 (By Priority Mail)

Michelle Boulton
8491 Hospital Dr., #178
Douglasville, Georgia  30134-2412 (Electronically by agreement)

Rick Dale Hollingsworth for William Mitchell Pakosz
14930 Greenbrier Lane
Homer Glen, Illinois  60491

I certify under the penalty of perjury under the laws of the United States of America, that the foregoing is true.

November 03, 2022

Rick Dale Hollingsworth for William Mitchell Pakosz                  Date
14930 Greenbrier Lane
Homer Glen, Illinois  60491

PRIORITY & CERTIFIED    7021 0950 0001 1525 5171

# PRIORITY
# MAIL

US POSTAGE PAID
PM
LOCKPORT, IL
60441
NOV 04, 22
AMOUNT

**$21.05**

R2303S102073-16

1004        20001

5171

stinations.

5171

ired.

# PRIORITY
★ MAIL ★



UNITED STATES
POSTAL SERVICE ®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

**FROM:** RICK DALE HOLLINGSWORTH
14970 GREENBRIER LN
HOMER GLEN, IL 60491

**TO:** CLERK, UNITED STATES COURT OF APPEALS
333 CONSTITUTION AVENUE, N.W.
WASHINGTON, DC
20001

Label 228, March 2016        FOR DOMESTIC AND INTERNATIONAL USE

VISIT US AT USPS.CC

SUPPLIES ONL