UNITED STATES COURT OF APPEALS
FOR DISTRICT OF C

No. 22-5143

NOV - 7 2022

RECEIVED

United States Court of Appeals for the District of Columbia

William Mitchell Pakosz

        Appellant

    v.

Antony L. Blinken, in his official Capacity as Secretary of State, the United States Department of State, the United States of America

        Appellees

Michelle Boulton and Rick Dale Hollingsworth,

        Appellants

---

Appeal from the United States District Court for the District of Columbia
Case No 1:19-cv-02316-RC
The Honorable Rudolph Contreras

---

## Appellant Michelle Boulton Brief

---

(Unrepresented)

William Pakosz, et al. v. Antony Blinken, et al., Case No. 22-5143, D.C. Ct. App.

Statement Regarding Oral Argument

Appellant Michelle requests oral arguments she be able to find an advocate certified to practice law in the Court of Appeals, D.C. Circuit. This case presents important jurisdictional and constitutional questions addressing when citizens and pro se complainants may pursue claims against state official for violating their constitutionally protected freedoms and the means available for the constitutionally guaranteed due process and redress of government especially where malevolent government officers hide their identities behind agency office titles. If lawyer certified to practice in the D.C. Circuit is found, oral argument is vital to bringing clarity to the most significant issues of law as related to the facts and process of the case and controversy to assist the Court in establishing justice on appeal.

Michelle Boulton
8491 Hospital Dr., #178
Douglasville, Georgia  30134-2412

i

Table of Contents

Statement of Oral Argument .......................................................................... i

Table of Contents .......................................................................................... ii

Table of Authorities ..................................................................................... iv

JURISDICTIONAL STATEMENT ................................................................ 1

STATEMENT OF ISSUES TO BE RAISED .............................................. 2

    The Appeal Presents A Number of Issues ............................................. 2

    ¶4.   Complaint Amendment is Warranted for Unlawful Actions .................... 2
          Subsequent To Boulton's Filing

    ¶5.   Sanctions Are Warranted for Violations of Rule 11 ................................. 4

    ¶6.   There Remains A Controversy In the Case To Which ............................. 6
          Boulton Was Joined

STATEMENT OF THE CASE ...................................................................... 7

A.   Nature of the Case ..................................................................................... 7

B.   Conflict Between Boulton's Religious Belief and Governmental Practice ....... 7

C.   Boulton's Efforts To Obtain Passport By Religious Accommodation .............. 8
     Contrasted With Lawless Actions By Officers Under The Color of Law

D.   The Appellee Injures Boulton Again, Warranting A New Cause .................. 11
     of Action

E.   Two Formal Notices of Rebuke Having No Effect, Boulton Files ................. 14
     for Sanctions

F.   March 25, 2022 Order Disposed of Boulton's Case ......................................... 16

ARGUMENT ........................................................................................................17

A.   Complaint Amendment Is Warranted For Unlawful Actions...........................17
     Discovered Subsequent To Bouton's Filing

B.   A Controversy Continues To Exist, Based Upon Facts Discovered and ........19
     Liability of Nameable and Yet-Named Persons Who Injured Boulton

C.   Relif To Boulton's Injuries That Occured During Litigation Must Not..........20
     Unjustly Evade Review and Relief

D.   Notice of Rule 11 Violations Began June 15, 2021, and Was Sufficient........29

RELIEF  ............................................................................................................30

Signature Block.................................................................................................A-1

Certificate of Compliance ..................................................................................A-2

Declaration of Michelle Ann Boulton ................................................................A-3

## Table of Authorities

United States Constitution

Article III .............................................................................................................. 1

First Amendment ................................................................................... 1, 4, 13, 20

Fifth Amendment ......................................................................................... 1, 4, 20

Ninth Amendment ........................................................................................ 1, 4, 20

United States Supreme Court

*Camp v. Boyd* ....................................................................................................... 21

*Hecht Co. v. Bowles* ............................................................................................. 21
    321 U.S. 321

*Holt Civic Club v. City of Tuscaloosa* ............................................................... 28
    439 U.S. 60 (1978)

*Harlowe v. Fitzgerald* ................................................................................... 27, 28
    457 U.S. 800 (1982)

*Rosden v. Leuthold* .............................................................................................. 28
    274 F.2d 747, 107 U.S. App. D.C. (1960)

*Swierkiewicz v. Sorema, N. A.* ........................................................................... 22
    534 U.S. 506

*Thomas v. Review Board of the Indiana Employment Security Div, et al.* ....... 25
    450 U.S. 707 (1981)

*Uzuegbunam v. Preczewski* ........................................................................... 28, 29
    592 U.S. ____ (3/8/2021)

*Virginian R. Co. v. System Federation* .............................................................. 21
    300 U.S. 515

United States Court of Appeals / Circuit Court

*Anthony Grace & Sons, Inc. v. U.S.* ............................................................26, 27
    345 F.2d 808, Ct.Cl. (1965)

*Aldana v. Del Monte Fresh Produce, N.A.* ......................................................22
    416 F.3d 124, 11 Cir. (2005)

*Almana v. United Airlines, Inc.* ..........................................................................2
    851 F.3d 1060, 1074 (11th Cir. 2017)

*Bryant v. Avado Brands, Inc.* ...........................................................................22
    187 F.3d 1271, 11th Cir. (1999)

*Fielding v. Brebbia* ...........................................................................................22
    399 F.3d 1003, 130 U.S. App. D.C. 270 (1968)

*Hanna v. United States Veterans' Administration Hospital* ............................26
    514 F.2d 1092, 3rd Cir. (1975)

*Harper v. Blockbuster Entertainment Corp.* ....................................................22
    139 F.3d at 1385 (Apr. 1988)

*Haynes v. Hooters of Am. LLC* ..........................................................................2
    893 F.3d 781, 784, 11th Cir., (2018)

*LaBounty v. Adler* .............................................................................................24
    933 F.2d 121, 2nd Cir. N.Y. (1991)

*Pakosz v. Blinken* ...............................................................................................2
    22-5143, Doc. 1958987

*Parker v. Griswold* ...........................................................................................28
    17 Conn. 288 (1845)
*Peterson v. U.S.* .................................................................................................26
    694 F.2d 943, 3rd Cir. (1982)

*Porter v. Prentice* .............................................................................................25
    155 F.2d 967, 7th Cir., Ill. (1946)

*Russo v. Central School Dist. No. 1 v. County of Monroe, et al.* ....................23
    469 F.2d 623 (1972)

*Sindermann v. Perry* ......................................................................26
    430 F.2d 939, 5th Cir., Tex. (1970)

*Solomon v. Northwestern State Bank* ...............................................23
    327, F.2d 720

*U.S. v. Howard* ........................................................................23, 24
    360 F.2d 373, Ct. App. Pa. (1966)

*Webb v. Portland Mfg. Co.* ..........................................................28, 29
    29 F. Cas. 506 (CC Me. 1838)

*Williams v. Taylor* .......................................................................26
    677 F.2d 510, 5th Cir., Miss. (1982)

United States District Court

*Anderson v. Industrial Elec. Reels, Inc.,* ...........................................26
    812 F.Supp. 999, D. Neb. (1993)

*Bergeson v. Dilworth* ....................................................................21
    738 F. Supp. 1361, D. Kan. (1990)

*Carmichael, et al. v. Pompeo, et al.* ..............................................1, 9
    U.S. Dist. Ct., D.C., 1:19-cv-02316

*Edge v. C. Tech Collections, Inc.* ....................................................25
    203 F.R.D. 85, E.D. N.Y. (2001)

*Gainey v. Brotherhood of Railway & Steam Ship Clerks* ................24
    177 F. Supp. 421, D. Pa. (1959)

*Haft v. Dart Group Corp.* ..............................................................27
    841 F.Supp. 549, D.Del. (1993)

*Liquid Carbonic Corporation v. Goodyear Tire & Rubber Co.* ............................. 19
    38 F. Supp. 520 (D. Ohio, 1941)

*Miller Brewing Co. v. Acme Process Equipment Co.* ....................................... 20
    148 F. Supp. 41, (D.D.C. 1957)

*Streeter v. Erie R. Co.* ........................................................................ 26
    25 F.R.D. 272, S.D. N.Y. (1960)

*Walker v. National Recovery, Inc.* ........................................................ 24
    42 F. Supp. 2d 773, 7th Cir. Ill. (1999)

State Courts

*Parker v. Griswold* .............................................................................. 28
    17 Conn. 288 (1845)

Foreign Courts Cited By The U.S. Supreme Court

*Ashby* .............................................................................................. 28
    2 Raym. Ld., 92 Eng. Rep.

*Dods v. Evans* ................................................................................... 26
    15 C. B. N. S. 621, 143 Eng. Rep. 929 (C. P. 1864)

*Marzetti v. Williams* ........................................................................... 28
    1 B. & Ad. 415, 109 Eng. Rep. 842 (K. B. 1830)

Law Review Publications

*Commentaries on the Law of Agency* .................................................... 28
    § 217, p. 211 (1839)

Richard D. Freer, Robert and Wendy Collins Perdue ............................... 18
    *Civil Procedure – Cases, Materials and Questions, 3d. Edition*

1 T. Sedgwick, ................................................................................... 28
    *Measure of Damages* 71, n.a. (1880)

United States Code

5 U.S.C. § 552a ............................................................................... 1, 13
   *Privacy Act*

5 U.S.C. 701-706 .................................................................................. 1
   *Judicial Review*
8 U.S.C. § 1185 .................................................................................... 7
   *Travel Control of Citizens and Aliens*

18 U.S.C. § 241 .................................................................................... 1
   *Federally Protected Activities*

22 U.S.C. § 2714a(f) .......................................................................... 10
   *Revocation Or Denial Of Passport In Case Of Individual
   Without Social Security Account Number*

22 U.S.C. § 2721 .................................................................................. 1
   *Impermissible Basis for the Denial of Passports*

28 U.S.C. § 1331 .................................................................................. 1
   *Federal Question*

28 U.S.C. § 1346 .................................................................................. 1
   *United States as a Defendant*

28 U.S.C. § 1361 .................................................................................. 1
   *Action To Compel and Officer of the United States To Perform
   His Duty*

28 U.S.C. § 2201 .................................................................................. 1
   *Creation of Remedy*

28 U.S.C. § 2202 .................................................................................. 1
   *Further Relief*

28 U.S.C. § 1291 .................................................................................. 2
   *Final Decisions of District Courts*

28 U.S.C. § 1292 .................................................................................. 2

*Interlocutory Decissions*

42 U.S.C. § 408 ................................................................. 1, 13, 15
  *Penalties*

42 U.S.C. § 1983 ...................................................................... 1
  *Civil Action For Deprivation of Rights*

42 U.S.C. § 2000bb ............................................................... 1, 13
  *Religious Freedom Restoration Act* (RFRA)

44 U.S.C. § 3512 ..................................................................... 13
  *Paperwork Reduction Act, Public Protection*

Federal Rules of Appellate Procedure

Rule 4 (a)(1)(B) ...................................................................... 2
  *Appeal As of Right*

Rule 28(4)(A)-(D) ..................................................................... 1
  *Briefs*

Federal Rules of Civil Procedure

Rule 5 ............................................................................... 29
  *Serving and Filing Pleadings and Other Papers*

Rule 11 ............................................................. 3, 5, 13, 14, 15, 29
  *Signing Pleadings, Motions, and Other Papers;*
  *Representations to the Court; Sanctions*

Rule 12(b) ....................................................................... 22, 24
  *Defenses and Objections*

Rule 15(a)(2) ....................................................................... 28
  *Amended and Supplemental Pleadings*

Rule 16(b) .......................................................................... 18
  *Pretrial Conferences - Scheduling*

Rule 54(c)..........................................................................................................21
    *Judgment*

Rule 56 ...................................................................................................24, 25, 26
    *Summary Judgment*

U.S. Passport Policies, Procedures and Forms

Form DS-82.................................................................................................7, 8, 13
    *U.S. Passport Renewal Application for Eligible Individuals*

## JURISDICTIONAL STATEMENT

1.     Pursuant to Rules 28(4)(A)-(D):  Michelle Boulton, Appellant, is a natural-born citizen of the United States of America, unrepresented.  She petitioned the district court as an intervener in the United States district court, District of Columbia in the case 1:19-cv-02316 (A. A-1, p. 11, ECF 94)  That same day, May 21, 2021, Appellant Pakosz moved to join Boulton in that case styled *Carmichael, et al. v. Pompeo*, et al (*Id.*, ECF 92).  Boulton's intervention motion and the case in which she was moved to join is a civil suit in the original jurisdiction of the district court, District of Columbia.  It is a suit against United States officers who acted under the color of law in violation of the First, Fifth, and Ninth Amendments, and laws of the United States such as 42 U.S.C § 2000bb, 42 U.S.C. § 1983, 22 U.S.C. 2721, the Privacy Act 5 U.S.C. § 552a, 42 U.S.C. § 408, 18 U.S.C. § 241 and 245.  The district court has original jurisdiction pursuant to 5 U.S.C §§ 701-70-6, and 28 U.S.C. §§ 1331, 1346, 1361, 2201, and 2202 and the Constitution of the United States of America.  There are important public policy issues regarding unconstitutional statutes, unconstitutional enforcement of regulations, and unlawful actions of United States employees that cannot be a function of an official capacity on the basis of malevolent denial of due process and hostility to religion.  Each of those wrongs are traceable to tangible injuries upon Boulton who has Article III standing, remedy at law and equity, where money damages are warranted.

1

2.     On March 25, 2022, the district court granted the defendants' (Appellees') motion to dismiss regarding Boulton and Appellant Pakosz.  (A. A-2, pp. 20-22, ECF / 124, Dist. Ct. Order, 3/25/22; A. A-3, pp. 23-55, ECF 125, 3/25/22 Opinion).  The claims of Boulton were disposed as final, in so many words to be moot or not judiciable.  On May 18, 2022, the Plaintiffs filed a timely notice of appeal from the district court's March 25th order pursuant to Rule 4(a)(1)(B) (A. A-1, p. 16, ECF 132).  The D.C. Circuit ruled on August 11, 2022 (Cir. Ct. 22-5143, Doc. 1958987) that Plaintiffs Boulton and Pakosz (with Hollingsworth filing as substitute) met the threshold of finality of 28 U.S.C. § 1291 or applied as a collateral decision as required by 28 U.S.C. § 1292.

3.     There remains a case and controversy regarding not only Boulton's injury traceable to the unlawful acts of the defendants prior to her filing suit, but there remains a controversy over the traceable injuries to Boulton after she filed suit. There remains a controversy over the issue of sanctions moved for by Boulton.

> This Court reviews dismissal for lack of jurisdiction *de novo*, and mootness *de novo*, *Haynes v. Hooters of Am., LLC,* 893 F.3d 781, 784 (11th Cir. 2018), and denial of leave to amend the complaint for abuse of discretion. *Almana v. United Airlines, Inc.*, 851 F.3d 1060, 1074 (11th Cir. 2017).

### STATEMENT OF ISSUES TO BE RAISED

**The Appeal presents (number) issues:**

4.     **Complaint Amendment Is Warranted For Unlawful Actions**

**Discovered Subsequent To Boulton's Filing** - Boulton's March 9, 2021 passport

renewal application was denied (A. B-25, p. 344 / ECF 98-1, p. 2) for not

providing a SSN notwithstanding her request for religious accommodation (A. B-

22, pp. 334-348 / ECF 109-3, pp. 2-6). In response, Boulton provided information

from the district court case which she later joined that said the passport agency was

granting religious accommodation (A. A-1, p. 10, ECF 80; B-23, pp. 339-340). In

those documents, the fact that the passport agency had a SSN in their records was

clearly evident. During litigation for the sake of an unlawful delay, Kristia

Watkins made a declaration under oath, willingly, knowingly, intelligently, in bad

faith, that was false, a fraud both directly and extrinsically (A. A-1, p. 12, ECF 95-

1; B-24, pp. 340-341) which communicated that the agency was merely waiting for

more information from Boulton. That information that she alluded to was in fact

for Boulton to confess a SSN. Amendment to the complaint is warranted to

address Watkins's false statements where the facts cited or alluded to raise an

actionable suit against Watkins and others who were involved in the process raised

by Watkins.

      a.    Is there error in law, clear error in fact, and/or abuse of discretion in

      the district court dismissing Boulton's motion to intervene and Pakosz's

      motion to join her? There is a controversy of whether Boulton's passport was

      infact, in a denied status anytime from March 9, 2021 until August 20, 2020;

3

and a controversy of whether the 'delay' was due to legitimate administrative processing or willful acts in hostility to Boulton because of her request for religious accommodation and filing her complaint. Did the district court abuse discretion by not allowing the matter to be solved without legitimate adversarial process rather than merely relying on the contested declaration of Kristia Watkins and the U.S. Attoney's efforts to lie to cover a lie?

b.    Is it error in law, clear error as to the facts, or abuse of discretion for the district court to not recognize that the controversy over the facts of whether Boulton experienced a denied passport, and the wantonly false allegations of Watkins and Hair leading to many new days of being denied a passport, warrants opportunity to amend the complaint, resolve the dispute, and apply liability to those who injured Boulton anew under the color of law?

c.    Will the injuries done to Boulton's rights under the First, Fifth, and Ninth Amendments to the constitution, as well as injuries to her due to the perpetrator's violations of several statutes protecting those rights, escape review, remedy, and relief that is due her if Boulton is dismissed from the litigation and adjudication of her suit?

5.    **Sanctions Are Warranted For Violations of Rule 11** – In response to Boulton's motion to intervene and Pakosz's motion to join her, the U.S. Attorney objected and moved to dismiss Boulton from the case. Attorney Hair first relied on

4

the declaration of Kristia Watkins, which falsely inferred that there was something other than a SSN for which the agency was waiting. In subsequent filings of Attorney Hair, he incrementally changed his argument until he said that the delay in issuing Boulton's passport was due to the wait for information for which he falsely stated that she provided. Without providing the adversarial process through discovery to investigate record or deposition evidence to the controversial statements of the Attorney Hair and Watkins, the district court made a finding of fact that negated Boulton's relief for the unlawful denial of her passport. The district court also said that the notice given by Boulton for sanctions was not adequate without describing the alternate form for which she should have taken.

a.   Were Boulton's repeated on-the-record reproof of the false statements of June 15th and September 2nd of 2021 adequate notices under the spirit-of-the-law notice requirements for a motion for sanctions? Did the district court err in law in that it gave no specific description of what 'notice' should have looked like different from what was provided by Boulton?

b.   Did the district court err as a matter of law in construing Rule 11 to disallow the series of notices by Boulton related to her motion for sanctions.

c.   Was the lack of a particular form of notice fatal to Boulton's motion for sanctions, or did the district court error by not extending time for the accused to respond if there was an arguable controversy of what constituted

5

Boulton's notice by repeated notices of the wrongful conduct?

    d.   Did the district court err denying sanctions on the basis of strict procedural timing, even though the respondents to the sanctions motion waive their timeliness objection by repeating the wrong in their response?

    6.   **There Remains A Controversy In the Case To Which Boulton Was Joined -** The other Plaintiff parties in combination moved to join Boulton to their case. Damages relief was scattered in the complaint. On the government's motion to dismiss, courts must construe the complaint broadly and in the plaintiffs' favor. Yet, the district court ruled that there were no damages available for Boulton because the court erroneously ruled that there were no damages available to the other complainants base on the court's narrow reading of the complaint. At least one perpetrator of unlawful injury upon the rights of Boulton is now identified and others are identifiable by their pseudonym. Did the district court:

    a) Err as a matter of law and abuse discretion where Boulton was excluded from the benefit of the complaint to which she was joined by the plaintiffs?

    b) Commit clear error as to fact abuse discretion excluding her from the variety of damages claims to which she can apply to recently identifiable malevolent actors?

    c) Err and abuse discretion where it gave no opportunity for Boulton amend the joined complaint to particularly name Kristia Watkins, at a minimum, who

are personally liable for appropriate damages?

## STATEMENT OF THE CASE

**A.     Nature of the Case**

7.     The most profound purpose of the suit is to check the violation of the

U.S. Constitution, statutes, the U.S. President's executive orders, regulations,

written policies by U.S. officer who denied Boulton a passport indefinitely until

such time as she recant her activity of religion.  So far, they do so with impunity.

8.     Just as important is whether the judge has the discretion to adjudicate

Boulton's suit or instead choose to use any colorable excuse to overlook the

wrongful and injurious actions of the government perpetrators and the egregious

moral and legal violations of the law, rules, orders, regulations, and policies and

the impact that the injury by those wrongs had on Boulton's rights.  For a court of

appeals, it comes down to scrutinizing the integrity of due process in the district

court so that the path for justice is unobstructed.  Boulton's injuries, before and

after her joining the suit, must have remedy and relief.

**B.     Conflict Between Boulton's Religious Belief and Government Practice**

9.     The law of the United States at 8 USC §1185 prohibits Boulton from

departing or entering the United States without a passport.

10.     The U.S. passport application renewal forms DS-82 states:

11.     "FAILURE TO PROVIDE INFORMATION REQUESTED ON THIS

7

FORM, INCLUDING YOUR SOCIAL SECURITY NUMBER, <u>MAY</u> RESULT

IN SIGNIFICANT PROCESSING DELAYS AND/OR THE DENIAL OF YOUR

APPLICATION." (Emphasis added)

12.   As a ma matter of religion, Boulton can not identify herself with a Social

Security Number (SSN) (A. B-22, pp. 333-338 / ECF 109-3, Boulton 3/3/21

Declaration).  It is a belief and activity of religion that is hers for decades. (*Id.*, p.

335, last three ¶s / ECF 109-3, p. 3).

## C.    Boulton's Efforts To Obtain Passport By Religious Accommodation Contrasted With Lawless Actions By Officers Under The Color of Law

13.   In July of 2020, Boulton went to U.S. Consulate in San Juan, Costa Rica.

She filed a DS-82 renewal application without a SSN just as she had done a decade

earlier.  She needed to return to the U.S. immediately prior to the pending travel

lock-down due to the COVID-19 pandemic.  Her March 39, 2021, declaration

alludes to unlawful abuse, amounting to torture, that she suffered during her

attempt to renew her passport in order to get home (A. B-22, p 336).  The passport

agent tortured Boulton in a modern-day inquisition.  Boulton had to abandon her

religious activity, sacrificially practiced for decades, or not get a passport to return

to the U.S. prior to the travel lock-down.  Even after the confession of the number,

under literal duress from the powerful coercion, the passport agent only allowed

her a one-year temporary passport that left her renewal application open.  Boulton

discovered on March 12, 2021, the agent's procedures allowed him to give her

8

authorization for a return to the United States if she refused to identify with a SSN
(A. B-25, p. 344 / ECF 98-1, p. 2).

14.    Having returned home to the United States before the travel lock-down,
Boulton later returned to Costa Rica.  On March 3, 2021, Bouton drafted a letter to
Secretary of State Antony L. Blinken, requesting accommodation for religion (A.
B-22, pp. 333-338 / ECF 109-3).  She made an appointment at the U.S. Consulate
in San Juan, Costa Rica, to submit her request for passport renewal.  Between the
time that she drafted the letter to the Secretary, and the set appointment with the
passport agent, Boulton learned of the March 5, 2021, status report in the case
*Carmichael v. Pompeo* where the U.S. Attorney said that the passport agency
intended to accommodate the religious belief and activity of Appellent Pakosz who
also does not identify with a SSN.  (A. B-23, pp. 339-340, ECF 80).

15.    Boulton filed her application for a passport renewal on March 9, 2021,
along with the March 3rd letter to Secretary Blinken.  The passport agent who
received Boulton's application explained to Boulton that her request would not be
approved without her submitting a SSN.  <u>The agent admitted that he could see an
SSN associated with the passport record on his computer</u>.  Emboldened by the
therapy she had received for the traumatic stress she endured from the passport
agent's abuse the previous summer, Boulton was undaunted by the warning of
delay and ultimate denial of her application.  Boulton demanded the application be

9

processed with her formal request for accommodation.

16.   March 12th, the passport agent under the pseudonym "ACS" denied Boulton's application by email she had not put a SSN on the form, that she would have to file a new application after 90 days, and pay another fee, if she did not provide a SSN prior to that time (A. B-25, p, 344 / ECF 98-1, p. 2).  March 23, 2021, Boulton responded to the passport renewal denial (A. B-26, pp. 345-348 / ECF 109-4).  Referencing her letter to Secretary Blinken that was submitted with her application on March 3rd, Boulton reiterated that - she was eligible for a passport pursuant to statutes and regulations; the Religious Freedom Restoration Act protected her right to have a passport without forsaking religion.  She quoted the district court case government Status Report (A. B-22 / ECF 80) saying that Plaintiffs would not have to give a SSN to get a passport; she pointed out that denying her passport under the circumstances was an express violation of 22 U.S.C. 2721, and was wrongfully denying a waiver under 22 U.S.C. § 2714a(f)(1)(B).  (A. B-26, pp. 344-348 / ECF 109-4, pp. 2-4)

17.   Pseudonym ACS reiterated the denial on March 30, solely because Boulton did not provide a SSN 2021 (A. B-27, pp. 349-351 / ECF 109-5).

18.   April 2, 2021, Boulton replied to Pseudonym ACS, expressing the gravity of the situation, reminding ACS of the statutes, laws and regulations that provided for the accommodation of her religion and the issuance of her passport

renewal. She also asked for clarification of the status of the denial, whether it was

operative upon the notice of denial for the sake of appeal. She notified ACS of the

violations of law and asked for the name of the adjudicator communication (A. B-

28, pp. 352--355 / ECF 109-6). ACS replied immediately, only acknowledging the

receipt of Boulton's communication (A. B-29, pp. 356-357 / ECF 109-7).

**D.    The Appellee Injures Boulton Again, Warranting A New Cause of Action**

19.    May 21, 2021, Pakosz moved to join Boulton in the litigation (A. A-1, p.

11, ECF 92) and Boulton moved to intervene (*Id.,* p. 12, ECF 94).

20.    In response to those motions, the Appellees <u>initiated a new injury</u> and

cause of action by fraud and unreasonably prolonging Boulton's passport denial for

their own litigation-tactic benefit. The Appellees told the district court that

Boulton's request for religious accommodation had not been denied and that they

were merely waiting for more information (A. B-30, p. 358, 362-363 / ECF 95, p.

1, 5-6) . Their ruse was founded upon the perjured declaration of Kristia Watkins

(A. B-24, pp. 341-342 / ECF 95-1, pp. 1-2). Kristia Watkins had to have

deliberately left out glaringly pertinent information as extrinsic and direct fraud, or

her records and the hearsay that she obtained from those with whom she spoke is

direct and extrinsic fraud. The information from her declaration looks nothing like

the reality of that which Boulton submitted for the agency's records and the

responses of pseudonym ACS.

11

21.   Boulton objected to the fraud in her reply, filing exhibits of the March 12 and 21, 2021, denial letters (A. B-31, pp. 369-375 / ECF 98, 98-1, 98-2) .

22.   Appellees maintained the charade in non-action for two months until the district court spontaneously ordered the government to give a status report on Boulton's passport (A. A-1, p. 13, MINUTE ORDER, 08/08/2021).   The district court order issued on Sunday night, read by the government on Monday, prompted the government on Tuesday, August 10, 2021, to notify Boulton by email that a passport was scheduled to be issued (A. B-32, pp. 376-378 / ECF 109-8).

23.   In order to hide the fact that the 90-day waiting-for-information was a sham, the government attorney's status report said, "As explained in Kristia Watkins' declaration (ECF No. 95-1), which the government submitted in support of its opposition to Ms. Boulton's motion to intervene and Plaintiffs' joinder motion, Ms. Boulton has not been denied any passport for failing to provide a social security number." (A. B-33, p. 379 / ECF 105, p. 1)  The U.S. Attorney then implied that Boulton had provided additional information since that is what supposed to be the basis of the 'not-denied-for-lack-of-SSN' waiting-for-information was all about.

> "On or around March 9, 2021, the U.S. Embassy in San Jose, Costa Rica, requested that Ms. Boulton provide additional information regarding her identity no later than June 7, 2021, to respond. Id. On August 10, 2021, the State Department notified Ms. Boulton that the administrative process regarding her passport application has been completed and a passport has

been issued. See Exhibit A (attached hereto)." (A. B-33, p. 380 / ECF 105, p. 2)

24.    Boulton responded to the status report, rebuking the U.S. Attorney and Declarant Kristia Watkins for the fraud, pointing out that her passport had been denied for her not providing a SSN for reasons of religion (A. B-34, pp. 381-390 / ECF 109). Her having to controvert the declaration of Kristia Watkins forced Boulton to bring up in the case that which she hoped to bury, the incident of the trauma she suffered in July, 2020 (*Id.*, 382, ¶ 5.). She revealed that somewhere in the agency records was her written protest that she filed at that time regarding the cruelty that coerced her to confess a number that she had forsaken for decades. Boulton explained that the DS-82 filed in July 2020 was the application that the passport agent said was still an open application on March 9, 2021. Boulton revealed that a Mr. Doe said regarding the SSN, "Of course, we do we already have it," (*Id.* p. 383, ¶8) . Boulton's controverting Krisita Watkins's declaration make it plainly clear that the agency already had a number on their records at least on March 9, 2021, and their refusing her a passport was in wonton disregard for her rights protected by the First Amendment, 48 U.S.C. § 408 (felony), RFRA, 5 U.S.C. 552a, 44 U.S.C. 3512, and a blatant denial of due process. Attorney Hair and Kristia Watkins are subject to penalty according to Rule 11.

25.    None-the-less, the U.S. Attorney tripled-downed on the fraud, by direct fraud, when he stated (Underlined emphasis added to highlight falsehoods):

13

""As for Ms. Boulton, Defendants have already informed the Court that the State Department <u>has issued Ms. Boulton a passport without the need for her to submit her social security number.</u> See Defs.' Status Report (ECF No. 105) at 1. Ms. Boulton's "response" to the Department's status report does not establish otherwise. See Resp. to Defs.' Status Report (ECF No. 109) ¶ 3 (asserting that her application was "denied multiple times"). <u>Indeed, the correspondence appended to Ms. Boulton's filing makes clear that her application was never denied.</u> 3 See <i>id.</i>, Ex. 2 at 2 (Embassy email dated March 30, 2021, stating that Ms. Boulton's "passport application will remain pending at the Embassy for 90 days" and "[i]f the required information is not received within the 90-day period, the application will be denied"). <u>After Ms. Boulton submitted additional information,</u> see id., Ex. 3, the Department notified her that "[t]he administrative process has been completed and your passport has been issued." Id., Ex. 8 at 1."" (A. B-35, p. 391 / ECF 117, p. 15)

26.    Addressing the above lies in reverse, the U.S. Attorney directly and wantonly falsified that Boulton had submitted additional information for which Kristia Watkins was falsely supposed to be waiting.  It is a jury who ought to decide whether it is "clear" that Boulton's application for passport renewal was denied.  Whether or not the malevolent agents placed a rubber stamp saying 'DENIED' on the application form, the renewed passport was denied in actuality and all practical purposes to Boulton herself.  In fact, the Department had not "issued Ms. Boulton a passport without the need for her to submit her social security number."  In July 2020, they extracted it from her by cruel inquisition.

**E.    Two Formal Notices of Rebuke Having No Effect, Boulton Files For Sanctions**

27.    Boulton filed a motion for sanctions against Kristia Watkins and U.S. Attorney Christopher Hair pursuant to rule 11 on October 21, 2021 (A. B-36, pp.

392-398 / ECF 121).  Her attached affidavit cited traceable injuries that warrant a suit against Kristia Watkins, at a minimum, in Watkins' private capacity acting under the color of law. (A. B-37, pp. 399-401 / ECF 121-1)

28.     The government's response was that there was no standing for the court to adjudicate the sanctions motions since Boulton had not been admitted to the case and the 21 day minimum notice requirement was not fulfilled.  The substantive argument was, "Second, Ms. Boulton's motion is entirely without merit because the record in this case establishes that Defendants never denied her passport application and that Ms. Boulton <u>did indeed submit additional information in further support of her application</u>, which the State Department ultimately approved.  (A. B-38, p. 402 / ECF 122, p. 3 - Emphasis added).

29.     Boulton replied that the notification of the misconduct and demand for repentance began June 15, 2021 and even in their response to the sanctions motion, they continued the misconduct (A. B-39, pp. 403, ¶ 1; 406-407, ¶ 8 / ECF 123, pp. 1, 4-5).  The spirit and purpose of rule eleven justified sanctions under the circumstances, especially since the U.S. Attorney lied again in his response to the sanctions motion (*Id.* pp. 2-3, ¶ 5 / ECF 123, p. 2-3).

30.     Boulton's replied also that her notice to Watkins and Hair for their rule 11 violations began June 15, 2021 (*Id.* pp. 408-409, ¶¶ 12-14 / ECF 123, pp. 6-7),

31.     Boulton argued that denial of access to the record wrongly prevents justly

proving the facts (*Id.* pp. 410-411, ¶16 / ECF 123, p. 8-9).

**F.      March 25, 2022 Order Disposed of Boulton's Case**

32.   March 25, 2022, the district court disposed of Boulton's case saying:

"After the parties' briefs were filed, and in response to the Court's
request, Defendants filed a status report with an update about
Boulton's passport application: the processing of Boulton's
application had completed and her passport had been issued. Defs.'
Status Report at 2, ECF No. 105. Boulton confirmed that she
received her passport on August 20, 2021, without submitting a
social security number. Boulton's Resp. Defs.' Status Report ¶ 24,
ECF No. 109. Boulton does not have standing for equitable relief
because she already has her passport. And, as explained below,
there are no live claims for damages. Therefore, even if Boulton
were joined as a plaintiff in this case, she would not have standing
for any relief. The motions for leave to intervene, for joinder, and
to file documents on behalf of Boulton, ECF No. 93, are therefore
denied." (A. A-3, pp. 36-37 / ECF 125, pp. 14-15)

33.   A response to the March 25, 2021 Order was filed which Boulton

joined (A. A-1, pp. 15-16, ECF 127 & 131).  Among other things, Boulton

objected to the district court rubber-stamping the government narrative that

was not supported by a scintilla of evidence, and contradicted the restricted

evidence that was available.  The district court erroneously considered the

unlawful conduct of the perpetrators as benign rather than unlawful.  The

district court whitewashed the injuries to Boulton who was in a status of "writ

ne exeat republica for more than two months."  The lack of a particular form

required of notice made the district court's finding arbitrary.  The court

ignored the legal standards presented by Boulton (A. B-40, pp.415-417 / ECF 127, pp. 28-30).

## ARGUMENT

34.  Boulton did not claim damages at the outset of her drafting her motion to intervene for a number of reasons which are prejudicial to her if she is refused the opportunity to amend her motion or the complaint to which the other plaintiffs moved to join her (Boulton Declaration, Brief Addendum Page A-3).  Her need for passport renewal was urgent.  The trauma that she experienced by the torturous coercion of the passport agent in July 2020, was something to which she had a limited coping power.  It effected her traumatically, emotionally, mentally, spiritually, and physically.  The breakthrough came when the Appellees raised factual issues going back to July 2020, that opened Boulton's wounds, compounding her trauma because the Appellee's account was false.  There is a controversy in Boulton's case that is ripe for adjudication and warrants amendment of her complaint, discovery, a subsequent amendment, and trial to judgment.

## A.    Complaint Amendment Is Warranted For Unlawful Actions Discovered Subsequent To Boulton's Filing

35.  Kristia Watkins has been allowed to misrepresent the reality of the egregious torture of Boulton beginning July 2020.  She has also been free to open Boulton's wounds and add further injury to the insult.  Kristia Watkins's

17

declarations are illicitly and *ultra vires* having the power of evidence without the

verification and scrutiny of examination or cross-examination. Yet, the injured

Boulton is gagged and excluded from the agency records and opportunity to

present proper evidence that will justify the damages suit that she needs to bring

upon Kristia Watkins. Boulton subjected herself to the discretionary case

management of the district court judge. The district court judge abused his

discretion in closing the door to discovery, the status which the case was in when

she moved to intervene and was moved to join. Beginning November 11, 2019,

motions were being made scheduling conference and discovery prior to Boulton

being moved to join (A. A-1, p. 4, ECF 10; p. 4, ECF 27, p. 14; p. 7, ECF 55, pp.

12-13; p. 7 ECF 54, pp. 1 & 6). The Plaintiffs protested the one-sided coerced

discovery granted to the government (A. A-1, 9, ECF 71, p. 8). Amending the

complaint was the next process to which Boulton was waiting as one of the

Plaintiffs, which would logically come after the discovery process, pursuant to

Rule 16(b). Discovery will expose the unconstitutionality of certain people's

actions and of those processes, policies, and procedures.

> "The discovery rules also permit parties to acquire information for the
> purpose of strengthening their own cases. In many types of cases, the
> strongest evidence of wrongdoing will be in the possession of the alleged
> wrongdoer." Richard D. Freer, Robert and Wendy Collins Perdue, *Civil
> Procedure – Cases, Materials, and Questions, 3d. Edition*, © 2001[1], p. 379

---

[1] D. Freer, Robert Howell, Hall Professor of Law and Dean of Faculty, Emory University School
of Law, Atlanta, Georgia & Wendy Collins Perdue, Associate Dean and Professor of Law

36.   Thus, the district court excluding discovery to all plaintiffs and aiding the respondents to evade scrutiny, denied to Boulton her next litigation step of moving to amend the complaint in light of that which she has recently discovered by declarations of the Appellees.  Amendment to the complaint for the benefit of the court is warranted to address Watkins's false statements where the actual facts raise an actionable suit against Watkins and particular other people who were involved in the particular processes raised by Watkins. "Where a bill states a cause of action entitling complainant to equitable relief on any theory of the case, a court may grant it under a prayer for general relief, though other specific relief may be mistakenly prayed for.  *Liquid Carbonic Corporation v. Goodyear Tire & Rubber Co.,*  38 F. Supp. 520, D.C. Ohio (1941)

**B.     A Controversy Continues To Exist, Based Upon Facts Discovered and Liability of Nameable and Yet-Named Persons Who Injured Boulton**

37.   There is a controversy of whether Boulton's passport was in a denied status anytime from March 9, 2021 until August 20, 2020.  There is a controversy of whether the 'delay' was due to legitimate administrative processing or willful acts in hostility to Boulton because of her request for religious accommodation and filing her complaint.  It is clear on its face of the record, and only obfuscated by the

Georgetown Unitversity Law Center, Washington, D.C. *Civil Procedure – Cases, Materials, and Questions, Third Edition*, Anderson Publishing Co., Cincinnati, © 2001, p. 377

19

Appellee's sophistry and court endorsement. The district court abused discretion by not allowing the matter to be solved with adversarial process rather than merely relying on the contested declaration of Kristia Watkins. The district court erred when it made a quasi finding of facts since it cannot make a real finding of fact without adversarial submission, verification, and examination of proper evidence. Thus, the court's determination is unjust where it said that it was harmless for Kristia Watkins and Attorney Hair to keep a passport out of the hands of Boulton until August 18, 2021.

## C.   Relief To Boulton's Injuries That Occured During Litigation Must Not Unjustly Evade Review and Relief

38.   Boulton was clearly injured in her rights protected by the First, Fifth, and Ninth Amendments to the constitution, as well as injuries to her due to the perpetrator's violations of several statutes protecting those rights. Even if she had not, in her intervention motion, made a claim for damages up to the time of her filing, Boulton should not be excluded remedy and relief for unlawful and traceable injuries and damages which occurred after her filing motion. "Relief in form of damages can be awarded even if initial pleadings in action contained only prayer for declaratory relief. *Miller Brewing Co. v. Acme Process Equipment Co.,* 464 F. Supp. 856, D.C. Wis. (1979)

39.   The purpose of the district court is to bring justice to the injured Boulton. It's purpose is not to efficiently clean its docket. According to Rule

54(c), "Every other final judgment [other than default] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Boulton did not petition the district court for judgment on the pleading. She came for justice.

> Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. *Virginian R. Co. v. System Federation*, 300 U.S. 515, 552. Power is thereby resident in the District Court, in exercising this jurisdiction, "to do equity and to mould each decree to the necessities of the particular case." *Hecht Co. v. Bowles*, 321 U.S. 321, 329. It may act so as to adjust and reconcile competing claims and so as to accord full justice to all the real parties in interest; if necessary, persons not originally connected with the litigation may be brought before the court so that their rights in the subject matter may be determined and enforced. In addition, the court may go beyond the matters immediately underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary under the circumstances. Only in that way can equity do complete rather than truncated justice. *Camp v. Boyd*, 229 U.S. 530, 551-552.

40.    Boulton is entitled to relief on the basis of what was discovered even without the district court's denial of discovery. "If evidence is sufficient to sustain higher award than that requested in plaintiff's pleadings, complaint is considered amended to conform to proof. *Bergeson v. Dilworth*, 738 F. Supp. 1361, D. Kan. (1990). The complaint to which Boulton was joined demanded, "The remedy required is writ of mandamus, declaratory, judgment, and injunction for protection of religion, <u>and other relief in law and equity</u>, and compensation for costs and fees

21

where allowable by statute. (A. A-4, p. 57, ¶ 5 / ECF 51, p. 2). "Court in its final

jugment must grant such relief as claimant establishes he is entitled to receive."

*Fielding v. Brebbia,* 399 F.3d 1003, 130 U.S. App. D.C. 270 (1968). The

complaint jurisdictional statement included, "Damages where allowable and further

relief" (*Id.*, p. 59, ¶ 9 / ECF 51, p. 4).

> "Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must
> include only "a short and plain statement of the claim showing that the
> pleader is entitled to relief." When considering a motion to dismiss, the
> pleadings are construed broadly so that all facts pleaded therein are
> accepted as true, and all inferences are viewed in the light most favorable
> to the plaintiff. *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1273 n. 1
> (11th Cir.1999); see also *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506,
> 514, 122 S.Ct. 992, 999, 152 L.Ed.2d 1 (2002) ("The liberal notice
> pleading of Rule 8(a) is the starting point of a simplified pleading
> system, which was adopted to focus litigation on the merits of a claim.").
> Additionally, "[a] motion to dismiss is only granted when the movant
> demonstrates beyond doubt that the plaintiff can prove no set of facts in
> support of his claim which would entitle him to relief." *Harper v.
> Blockbuster Entertainment Corp.*, 139 F.3d at 1385, 1387 (Apr. 1988) .

41.   Boulton, and the complaint to which she was joined, is not trained in the

level of specificity necessary to reach all of the relief to which she is entitled.

Nonetheless, circuit courts have said, "placement of the paragraph in another count

is unimportant to our review" of dismissal under Rule 12(b) because "[W]e read

the complaint as a whole." *Aldana v. Del Monte Fresh Produce, N.A.*, 416 F.3d

124, 1253 (11th Cir. 2005). The district court erred when it made a quasi finding of

facts since it cannot make a real finding of fact without adversarial submission,

verification, and examination of proper evidence. Thus its determination is unjust

where the court said it was harmless for Kristia Watkins participation in keeping a

passport out of the hands of Boulton until August 18, 2021. The district court

erred when it relied upon Kristia Watkins's non-adversarial declaration as evidence

as prejudice against Boulton when the only real evidentiary value it has on its face

is evidence of perjury by Watkins.

> Findings… should be both comprehensive and pertinent to the issues to
> provide basis for decision . . . <u>supported by evidence</u>,… sufficiently
> detailed, An important function of findings of fact is to aid an appellate
> court on review; accordingly, findings that are noting but cold rhetoric,
> couched in extraordinarily broad and general terms and stripped of
> underlying analysis or justification or an accompanying memorandum or
> opinion shedding some light on the reasoning employed, invite closer
> scrutiny, especially when the case concerns fundamental constitutional
> freedoms. *Russo v. Central School Dist. No. 1, Towns of Rush, Et Al., v.
> County of Monroe, et al.*, 469 F.2d 623 (1972)

42. The district court erred in law and abused its discretion when it allowed

itself to make a determination on the basis of its own speculation as to whether the

conduct of Watkins and Hair was malicious. Its fruit was a determination that was

clearly erroneous as to the real facts. "Findings cannot be based on speculation and

conjecture." *Solomon v. Northwestern State Bank,* 327 F.2d 720, Ct. App. Minn.

(1964). The district court erred by its practice of rubber-stamping the sophistry of

the U.S. Attorney and Kristia Watkins whose combined efforts prolonged the daily

injury of *ne exeat republica* upon Boulton without due process. "Failure of trial

court to make any finding of fact or conclusions of law except those which were

submitted by United States and which were adopted *in haec verba* was an

23

undesirable practice." *U.S. v. Howard*, 360 F.2d 373, Ct. App. Pa. (1966).

43.   The district court erred, violating Rule 12 (b)(6) where it ignored the

facts that there are new injuries to Boulton, where she had an action against the

parties who were revealed to have injured her under the color of law.

> "Courts are cautious in dealing with motions to dismiss for failure to
> state claim on which relief can be granted, particularly where to grant
> motion would terminate litigation before parties have had their day in
> court." *Gainey v. Brotherhood of Railroad & Steam Ship Clerks*, 177 F
> Supp 421 ( D.C. Pa., 1959)"

44.   The factual issue of whether there were facts to prove the perpetrators

were merely awaiting information or that they deliberately obfuscated the facts is a

controversy not open to Rule 56 summary judgment.

> "When the evidence is one-sided, then it is possible to end the case by
> summary judgment under Fed.R.Civ.P. 56. . . . But a complaint that
> presents a claim turning on factual issues and inferences, as this one
> does, may not be terminated under Rule 12(b)(6)." *Walker v. National
> Recovery, Inc.*, 42 F. Supp. 2d 773, 7th Cir., Ill (1999)

45.   The district court erred and abused discretion where it relied upon mere

declarations of the government rather than "proper evidence" without giving

adversarial due process to expose the false statements.

> "Rule 12(b)(6) does not give district court authority to consider
> matters outside pleadings; if movant wishes to test factual
> underpinnings of complaint, it may submit proper evidence outside
> pleadings and move for summary judgment under Rule 56." *LaBounty
> v. Adler,* 933 F2d 121, 2nd Cir., N.Y. (1991). (Emphasis added)

46.   The district court erred where it ignored the obvious quid pro quo

coercion of the government where the passport is required for travel, and entitled
to Boulton.  They coerced her to forsake loyalty to God or never have a passport
required to travel in or out of the United States.

> "Where the state conditions receipt of an important benefit upon
> conduct proscribed by a religious faith, or where it denies such a
> benefit because of conduct mandated by religious belief, thereby
> putting substantial pressure on an adherent to modify his behavior and
> to violate his beliefs, a burden upon religion exists.  While the
> compulsion may be indirect, the infringement upon free exercise is
> nonetheless <u>substantial</u>." *Thomas v. Review Board of the Indiana
> Employment Security Division et al.*, 450 U.S. 707, at 717-718 (1981)
> (emphasis added).

47.  The district court erred where it failed to treat the dismissal motion by the
Defendants as actually a defense on the merits.  "… and motion should be
considered as answer, then plaintiff was entitled to be fully heard and to introduce
competent evidence upon factual question thereby presented." *Porter v Prentice*,
155 F2d 967, 7th Cir., Ill. (1946)."  With access to proper evidence, Boulton will
demonstrate that her case is not moot.  "Personal stake in litigation which is not
moot; consequently, case or controversy still exists, and defendant's motion to
dismiss complaint pursuant FRCP 12(b)(1) and (6) will be denied." *Edge v. C.
Tech Collections, Inc.*, 203 F.R.D. 85 (E.D. N.Y., 2001).

48.  The district court erred in violation of Rule 56 where it rendered a
summary judgment without access to the administrative record that was clearly in
controversy.  "On motion for summary judgment, if question of fact exists

25

concerning existence of defense, issue cannot be determined on affidavits. *Hanna v. United States Veterans' Administration Hospital*, 514 F.2d 1092 (3d Cir. 1975). Under the circumstances, the judgment must be set aside for failure to comply with Rule 56(e)." *Peterson v. U.S.*, 694 F.2d 943, 946, 3rd Cir. (1982). The threshold for Summary Judgment had not been met since, "A motion for summary judgment is not a substitute for a trial, and on such a motion court must decline to decide any factual issue whose answer admits of reasonable doubt." *Streeter v. Erie R. Co.,* 25 F.R.D. 272 (S.D.N.Y. 1960) "Moving party must prove his right to summary judgment with such clarity that the nonmoving party cannot recover under any discernible circumstance." *Williams v. Taylor*, 677 F.2d 510, 5th Cir., Miss. (1982). "Summary judgment should be granted only when truth is clear, where basic facts are undisputed and parties are not in disagreement regarding material factual inferences that may be properly drawn from such facts. *Sindermann v. Perry,* 430 F.2d 939, 5th Cir., Tex., (1970). Summary judgment is an extreme and treacherous device which should not be granted unless the moving party has established a right to judgment with such clarity as to leave no room for controversy and unless the other party is not entitled to recover under any discernible circumstance. *Anderson v. Industrial Elec. Reels, Inc.*, 812 F.Supp. 999, D. Neb. (1993). "Denial of motion for summary judgment is appropriate when legal issues are of particular significance or particularly complex, or where

legal issues can be intelligently resolved only upon fully developed record."
*Anthony Grace & Sons, Inc. v. U.S.*, 345 F.2d 808, Ct.Cl. (1965) "Summary
judgment is rarely proper in cases raising equitable defense of unclean hands
because summary judgment is notoriously inappropriate for determination of
claims in which issues of intent, good faith, and other subjective feelings play
dominant roles, particularly when parties allege fundamentally conflicting facts."
*Haft v. Dart Group Corp.*, 841 F.Supp. 549, D.Del. (1993).   The Court wrongfully
evaded trial notwithstanding the critically important factual issues.   There are
substantive issues of intent, bad faith, and other subjective feelings that play
dominant roles, particularly when parties allege fundamentally conflicting facts.

49.   Kristia Watkins, Mr. Doe of March 9, 2021, and Mr. ACS of the passport
denial emails, acted unlawfully and their actions under the color of law are
traceable to the *ne exeat republica* without due process injury to Boulton.   The
Defendants are not immune since they violated "clearly established statutory or
constitutional rights of which a reasonable person would have known." *Harlowe v.
Fitzgerald*, 457 U.S. 800, 818 (1982).   Watkins, et al., is liable for whatever
damages are appropriate, she and they are not immune.

> "By defining the limits of qualified immunity essentially in objective
> terms, we provide no license to lawless conduct. The public interest in
> deterrence of unlawful conduct and in compensation of victims remains
> protected by a test that focuses on the objective legal reasonableness of
> an official's acts. Where an official could be expected to know that
> certain conduct would violate statutory or constitutional rights, he should

27

be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action." *Harlowe v. Fitzgerald*, 457 U.S. 800, 819 (1982)

50.    Whether Appellant's theories of law were correct, damages relief is due.

"We agree with appellants that a federal court should not dismiss a meritorious constitutional claim because the complaint seeks one remedy rather than another plainly appropriate one" *Spo Civic Club v. City of Tuscaloosa*, 439 U.S. 60 (1978).

"The purpose of subd. (c) of this rule and rule 15(b) of these rules, applicable to retrospective amendment of the pleadings and prayer for relief in order that they may conform to the evidence adduced at trial, is to avoid the tyranny of formalism. *Rosden v. Leuthold,* 274 F.2d 747, 107 U.S. App.D.C 89 (1960)

51.    Whether or not Boulton should have named nominal damages in her

motion to intervene, her being joined to the action with other theories of damages,

nominal damages are due by default:

 "Justice Story said that nominal damages are "presumed" "[w]here the breach of duty is clear." *Commentaries on the Law of Agency* §217, p. 211 (1839). . . . . And other jurists declared that "[t]he principle that every injury legally imports damage, was decisively settled, in the case of Ashby." *Parker v. Griswold*, 17 Conn. *288, *304–*306 (1845) (citing many cases on both sides of the Atlantic, including *Webb* and *Marzetti*)." *Uzuegbunam, et al. v. Preczewski, et al.* 592 U.S. _____ (2021), Slip opinion, p. 7

""Nonetheless, the prevailing rule, "well established" at common law, was "that a party whose rights are invaded can always recover nominal damages without furnishing any evidence of actual damage." 1 *T. Sedgwick*, Measure of Damages 71, n. a (7th ed. 1880); see also id., at 72 (citing Lord Holt's opinion in Ashby)."" *Id.* p. 7

""[E]very injury imports a damage," so a plaintiff who proved a legal violation could always obtain some form of damages because he "must

28

of necessity have a means to vindicate and maintain [the right]." *Ashby, 2 Raym. Ld.*, at 953–955, 92 Eng. Rep., at 136–137. Justice Story's language was no less definitive: "The law tolerates no farther inquiry than whether there has been the violation of a right." *Webb,* 29 F. Cas., at 508. When a right is violated, that violation "imports damage in the nature of it" and "the party injured is entitled to a verdict for nominal damages. Id., at 508."" *Id.* pp. 8-9""

,

**D.    Notice of Rule 11 Violations Began June 15, 201 and Was Sufficient**

52.    Boulton commenced notifying the U.S. Attorney Hair and Kristia Watkins of their Rule 11 violation on June 15, 2021 (A. B-31, pp. 369-375 / ECF 98, 98-1, 98-2).  Mr. Hair repeated the violation in his Defendants' Status Report on August 20, 2021 (A. B-33, pp. 379-380 / ECF 105, pp. 1-2).  Boulton gave a second notice of the Rule 11 violation on September 2, 2021 (A. B-34, pp. 381-390 / ECF 109, pp. 1-10).  Attorney Hair then repeated his violation a third time in his Reply for his dismissal Motion, committing a lie to cover the Rule-11-violation lies (A. B-35, p. 91 / ECF 117, p. 15).

53.    Boulton may not have cited the term "Rule 11" in her notices but she stated the nature of the Appellees' actions as both direct and extrinsic fraud.  The fraud accusation corresponds to the violation of Rule 11 (b)(1)-(4).  Service of notice did indeed commence on June 15, 2021, pursuant to Rule 5(a)(1)(E), "a written <u>notice</u>, appearance, demand, or offer of judgment, <u>or any similar paper</u>"; and 5(b)(1), serving it to the attorney, and 5(b)(E) by electronic filing.

54.    In their opposition to the sanctions motion, the U.S. Attorney Hair

repeated the false statements again, for a fourth time, in his argument responding to the motion for sanctions (A. B-38, p. 402 / ECF 122, p. 3).

55.   The district court erred in law regarding the nature of notice required, was in clear error in the finding of facts related to the notices, and abused discretion where he denied Boulton's motion for sanctions and the necessary discovery of the passport record and deposing of passport officers that would prove her allegation and the fraudulent acts of Watkins and Hair.  The district court also abused discretion when it allowed Kristia Watkins non-tested allegations regarding the events on her records to have the power of evidence though it does not qualify as such – and then oppositely, dismiss Boulton from litigation without the opportunity to access the controverted record by way of discovery.  That wrong of Watkins and Hair raises a new controversy which Boulton was denied the opportunity to put to the district court.

## RELIEF

56.   Grant review, vacate the district court judgment of March 25, 2022, and make appropriate orders in law and equity to have Boulton rejoin the litigation in the district court case no. 1:19-cv-02316 on remand. Order the district court to allow Boulton to amend her complaint, before and after discovery, and to adjudicate the case in accordance with the rules, with the ends of justice in mind.

William Pakosz, et al. v. Antony Blinken, et al., Case No. 22-5143, D.C. Ct. App.

Signature Block

My Appellant Michelle Boulton Brief is hereby respectfully submitted this _6_

day of November, 2022

Michelle Boulton
8491 Hospital Dr., #178
Douglasville, Georgia  30134-2412

A-1

William Pakosz, et al. v. Antony Blinken, et al., Case No. 22-5143, D.C. Ct. App.

Certificate of Compliance

My appeal brief complies with the rules regarding format and word count, having

_____8,043_____ words according to the measurement by MicroSoft Word

application.

Michelle Boulton
8491 Hospital Dr., #178
Douglasville, Georgia 30134-2412

A-2

William Pakosz, et al. v. Antony Blinken, et al.
Case No. 22-5143, D.C. Ct. App.

Declaration of Michelle Ann Boulton

1. I, Michelle Ann Boulton, testify that the foregoing statement is true based upon my personal knowledge.  Being a contributing party to the case Carmichael, et. al. v. Pompeo, et al., 1:19-cv-02316 in the United States District Court and now Appellant in the case Pakosz, et al. v. Blinken, et al., in the United States Circuit Court of Appeals, District of Columbia, request that the court rule in favor of my request to amend my complaint to include a claim for Damages.  My initial motion to intervene lacked a specific pleading for good cause or excusable neglect.  The facts that I verify herein support my request.

2. In July of 2020 at the Costa Rica Embassy, during the COVID Pandemic, with little time to return to the USA under an expatriation flight, I attempted to apply to renew my USA Passport.  It is still extremely painful and unbearably difficult to address this injury.

3. I was under grave distress needing to have documentation to return to the United States prior to the pending travel lock-down.  I filed my application without a SSN in accordance with the practice of my Christian religion of more than three decades.  The passport officer at the Embassy refused to process my DS-82 application unless I put a SSN in block 5 of the form even though he had no question about the validity of my identity.  I explained to him how

desperately I needed a travel document. I explained my convictions of religion.
I reminded him of the laws that protect religion. I plead with him to process my
request. I now understand that he had access to records electronically that
already had a SSN. I now understand that even without giving a SSN, he was
authorized to give me a return trip passport. At the time, with the false
information stated by the passport officer, I was coerced by his evil
manipulation knowing that I would be trapped in Costa Rica in the middle of the
pandemic. It put me in a panic attack. I could not think clearly. For some
reason, I was presented with a different form and the officer explained to me
that I would not have a travel document without writing a SSN on the form. I
lost my wits, and in desperation, I caved in to his demand.

4. I broke down and wept. As I got my wits about me, I drafted a protest of
the torturous process that I was put through. I submitted the protest to the
passport officer. He only issued a one-year temporary passport. I discovered on
March 12, 2021, that the passport officer was authorized to issue a return trip
travel document rather than torturing me into forsaking religion and writing a
SSN. Based on the conversation I had with the passport officer on March 12th, I
realized that the cruel passport officer in July 2020 already had the damnable
number. I have been devastated ever since.

5. I was tortured. It made me feel alienated by my Country. My personal,

mental and emotional distress persists until this day that resulted from my experience with United States employees at the Costa Rica Embassy.

6. Because of that traumatic experience, I have had to seek extensive spiritual and psychiatric counseling. I felt as if I not only failed God but betrayed Him. Due to dealing and coping with my anguish and suffering, I was not able to think about damages. To be honest, I just wanted to pretend like the whole event had never occurred. I knew that the filing in the district court would be a public record and I did not want what I believe to be a betrayal of God to be a public record.

7. However, after reading Kristia Watkins affidavit, written and signed under Penalty of Perjury, I know that this type of religious persecution will not stop until there is a remarkable pronouncement from the Courts in the form of Sanctions/Damages upon those that are trespassing on Citizens God given Rights. When I read Ms. Watkins statement I was appalled by the completely inaccurate information (I would even daresay lies) provided to the courts especially under Penalty of Perjury.

8. As I have stated, repeatedly, there was NEVER any additional information requested of me by anyone within the Department of State. The ONLY 'additional information' being requested of me is what I consider to be the Mark of the Beast – what most call the Social Security Number. The

written proof, from the ACS, has been submitted several times to this Court.

9.  This is why sanctions are necessary at this time and a chance for me to tell the full story that began in July 2020 contrast to the lies that Kristia Watkins told of regarding the processing of my July 2020 application that she cited in her declaration.  It is necessary to stop the perjury upon this court and, most importantly, to enforce the importance and necessity of the Religious Rights of a United States Citizen within the USA and the world.

10.  I believed that my desperate act of writing a SSN was an act forsaking God.  By the therapy I've received because of that incident, I know, though I don't always feel like, that sinful act is forgivable.  I know that all of us have sinned and fall short of the glory of God.  But while we were still sinners, Christ died for us.  After Peter denied our savior three times, Christ admonished him to make three alternative confessions about Peter's love for our Savior and to take up his pastoral ministry.  Likewise, I love God and I will not forsake my community of brothers and sisters in their stand for their Religious Rights.  I stand with God and my Brothers and Sisters, in humility, to demand that this never occurs again to a Citizen of the United States of America.  This is why I beseech the Court to rule in favor of my request for an opportunity to amend my complaint to correct the record cited by Kristia Watkins and for the court to apply sanctions to Kristia Watkins and U.S. Attorney Christopher Hair.

I hereby declare that the foregoing declaration is accurate and true to the best of my personal knowledge and sound recollection, and I do so declare under the penalty of perjury under that laws of the United States of America.

Michelle Ann Boulton                          Nov 6 2022
8491 Hospital Dr., #178                        Date
Douglasville, Georgia 30134-2412

A-3                                                                   p. 5