No. 22-5143

United States Court of Appeals for the District of Columbia

Pakosz, et al.

Appellants

v.

Antony L. Blinken, et al.

Appellee

Appeal from the United States District Court for the District of Columbia
Case No 1:19-cv-02316-RC
The Honorable Rudolph Contreras

**Appellant Michelle Boulton's Reply Brief**

**Re:  Appeal Brief 1973237 & Appellee Response 1976791**

(Unrepresented)

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

DEC 2 7 2022


RECEIVED

## TABLE OF CONTENTS

Table of contents ................................................................................................. i

Table of Authorities ........................................................................................... ii

Article III Standing Is Without Doubt ............................................................... 1

Intervention Was Briefed, Not Waived ............................................................. 3

Boulton Is Not an Unsuccessful or Failed Intervenor But Is Rather a ..................... 6
    Party With a Right to Be Reinstated

Appellee Frivolously Misstates Facts to Mislead the Court ...................................... 6

The Appellee Endorses 'Denial Under the Guise of Delay' and Prolonged ............ 8
    Injury as Their Justification to Nullify My Cause of Action

Injunctive Relief Is Warranted by the Appellees' Demonstrated Propensity .......... 10
    To Violate the Law

Cases Cited by the Appellees Are off Point or Support Boulton's Case ................ 12

The Appellees Have Not Met the Heavy Burden of the Party ............................... 13
    of the Party Asserting Mootness

Appellees Falsely Claim Boulton's Claim Included "No" Damages ..................... 14

The Appellees' Argument Regarding Timeliness Is Frivolous, .............................. 16
    and in Stark Contrast to the Substance of the Record

Injuries Discovered During Litigation Do Not Ban New Causes ........................... 17

The Appellees' Impairment Remarks Support Boulton's Intervention of Right .... 18

Appellee Speculations Are Unpersuasive and Inappropriate ................................. 20

Conclusion and Signature ................................................................................. 22

Addendum 1 – Certification for Word Count ..................................................... A-1

## TABLE OF AUTHORITIES

**United States Constitution**

Article III ............................................................................1, 3, 5, 12
    *Judicial Power*

First Amendment ...........................................................................19
    *Free Exercise of Religion*

Fifth Amendment...........................................................................19
    *Due Process*

Ninth Amendment .........................................................................19
    *Rights Retained*

Fourteenth Amendment ...................................................................2
    *Rights of Citizens*

**United States Supreme Court**

*Bolling v. Sharpe* ..........................................................................3
    347 U.S. 497 (1954)

*Cafeteria & Restaurant Workers Union v. McElroy*.......................3
    367 U.S. 886 (1961)

*Carpenters Union v. Labor Board*.................................................15
    341 U.S. 707 (1951)

*City of Mesquite v. Aladdin's Castle, Inc.* .....................................13
    455 U.S. 283

*Conley v. Gibson*..........................................................................10
    355 U.S. 41 (1957)

*Friends of the Earth, Inc. v. Laidlaw Environmental Services* ...............12, 13
    528 U.S. 167 (2000)

*Goldberg v. Kelly* ............................................................................................3
    397 U.S. 254 (1970)

*Goshen Mfg. Co. v. Myers Mfg. Co.* ...........................................................11
    242 U.S. 202 (1916)

*Hannah v. Larche* ...........................................................................................3
    363 U.S. 420 (1960)

*Hecht v. Bowles* .......................................................................................11, 15
    321 U.S. 321 (1944)

*Helmerich & Payne, Inc.* ..............................................................................15
    323 U.S. 37 (1944)

*Joint Anti-Fascist Refugee Committee v. McGrath* ........................................3
    341 U.S. 123 (1951)

*Meyer v. Nebraska* ......................................................................................2, 3
    262 U.S. 390 (1923)

*National Ins. Co. v. Tidewater Transfer Co.* ..................................................2
    337 U.S. 582 (1949)

*National Ins. Co. v. Tidewater Transfer Co.* ..................................................2
    337 U.S. 582 (1949)

*Perry v. Sindermann* .......................................................................................1
    408 U.S. 593 (1972)

*Regents v. Roth* .......................................................................................1, 2, 3
    408 U.S. 564 (1972)

*Shapiro v. Thompson* .......................................................................................3
    394 U.S. 618 (1969)

*Sherbert v. Verner* ..........................................................................................3
    374 U.S. 398 (1963)

iii

*Slochower v. Board of Higher Education* ..............................................3
    350 U.S. 551 (1956)

*Speiser v. Randall* ..............................................................................3
    357 U.S. 613 (1958)

*Stanley v. Illinois* .............................................................................3
    405 U.S. 645 (1972)

*United States v. Aluminum Co. of America* .....................................15
    148 F.2d 416 (1945)

*United States v. Concentrated Phosphate Export Assn., Inc.* .......13
    383 U.S. 199 (1968)

*United States v. Mine Workers* .........................................................4
    330 U.S. 258 (1947)

*United States v. Ruiz* .........................................................................4
    536 U.S. 622

*United States v. Trans-Missouri Freight Assn.* ..............................15
    166 U.S. 290 (1897)

*United States v. W.T. Grant Co.* ................................................10, 15
    345 U.S. 629 (1953)

*Walling v. Helmerich & Payne, Inc.* ...............................................15
    323 U.S. 37 (1944)

## United States Court of Appeals

*Adv. Mgmt. Tech., Inc. v. Federal Aviation Admin.* .......................12
    211 F.3d 633 (D.C. Cir. 2000)

*Brewer v. Sessions* ...........................................................................16
    863 F.3d 861 (D.C. Cir. 2017)

*Church of Scientology v. United States* ...........................................17
    485 F.2d 313 (9th Cir. 1973)

*Defs. Of Wildlife & Sierra Club v. Perciasepe* ...................................................6
  714 F.3d 1317 (D.C. Cir. 2013)

*Doe v. Gates* ...........................................................................................................1, 2
  856 F.2d 255 (D.C. Cir. 1993)

*E.E.O.C. v. Aramark Corp.* ........................................................................................3
  208 F.3d 266 (D.C. Cir. 2000)

*Foster v. Gueory* ....................................................................................................17
  655 F.2d 1319 (1981)

*Hall v. Ford* ...........................................................................................................1, 2
  856 F.2d 255 (D.C. Cir. 1988)

*Labor Board v. General Motors Corp.* .....................................................................15
  179 F.2d 221 (1950)

*Manasota-88, Inc. v. Tidwell* ..................................................................................20
  896 F.2d 1318 (11th Cir. 1990)

*Neusse v. Camp* .......................................................................................................19
  385 F.2d 694 (D.C. Cir. 1967)

*Roane v. Leonhart* ...................................................................................................16
  741 F.3d 147 (D.C. Cir. 2014)

*United States v. Ford* ..............................................................................................17
  650 F.2d 1141 (1981)

*Worlds v. Dep't of Health & Rehab Servs.* ...............................................................20
  929 F.2d 591 (11th Cir. 1991)

**United States District Court**

*Carmichael v. Pompeo* ......................................................................................10, 11
  486 F.3d 360, U.S. Dist. (D.C. Aug 28, 2020)

**Federal Rules of Civil Procedure**

Rule 11(c) .................................................................................5
*Sanctions*

Rule 24(a)(2)........................... 1, 4, 5, 6, 11, 12, 14, 15, 16, 17, 18, 20, 21, 22
*Intervention of Right*

Rule 54(b) ...............................................................................18
*Judgment on Multiple Claims or Multiple Parties*

**United States Code**

5 U.S.C. § 552a...............................................................................19
*The Privacy Act*

22 U.S.C. § 2721..............................................................................18, 19
*Impermissible Basis For The Denial of Passports*

42 U.S.C. § 408.............................................................................19, 20
*Penalties*

1.     The Appellees open their argument saying that their challenge to my

intervention of right motion was not addressed by the district court (Resp. p. 11).

It is not a bar to reversal of the district court's dismissal of my intervention.

**Article III Standing Is Without Doubt**

2.     Their first paragraph cites the four prongs of Rule 24(a)(2) which I reply

to later, as I track the Appellees' Response throughout this Reply.  They do not

challenge my Article III standing but insert a case quote on the topic. I have filed

enough claims and evidence to show that I have Article III standing.  My ongoing

needs: for a United States passport; to appease regulated carriers who provide

cross-border travel; to obtain a passport without forsaking religion; to not be

obstructed in the passport application process by psychological torture; and in the

property right that I've established in the entitlement by decades of good faith

application and issuance of a passport.  The case and controversy exists.

> The Supreme Court has long held that the constitutional guarantee of due
> process extends to protect property interests, broadly defined as the
> "interests that a person has already acquired in specific benefits." *Board
> of Regents v. Roth,* 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d
> 548 (1972). Property interests in employment are not themselves
> constitutionally created; rather, they are derived from independent
> sources, such as statutes, regulations, ordinances, or "existing rules or
> understandings ... that secure certain benefits and that support claims of
> entitlement to those benefits." Id. at 577, 92 S.Ct. at 2709; *Perry v.
> Sindermann,* 408 U.S. 593, 601-02, 92 S.Ct. 2694, 2699-2700, 33
> L.Ed.2d 570 (1972). The rules and understandings on which an employee
> bases his Fifth Amendment claims, however, must create an "objectively
> reasonable expectation" of continued employment. *Hall v. Ford,* 856

1

F.2d 255, 266 (D.C.Cir.1988).   Doe v. Gates, 981 F.2d 1316, 1320 (1993)

3.    I had a reasonable expectation of continued entitlement to a passport

without assault on my religion. I have a property right in my liberty, and in the

guarantees established in the Constitution of the United States of America.

> "Liberty" and "property" are broad and majestic terms. They are among the "[g]reat [constitutional] concepts . . . purposely left to gather meaning from experience. . . . [T]hey relate to the whole domain of social and economic fact, and the statesmen who founded this Nation knew too well that only a stagnant society remains unchanged." *National Ins. Co.* v. *Tidewater Co.,* 337 U. S. 582, 646 (Frankfurter, J., dissenting). For that reason, the Court has fully and finally rejected the wooden distinction between "rights" and "privileges" that once seemed to govern the applicability of procedural due process rights. The Court has /'"also made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money. By the same token, the Court has required due process protection for deprivations of liberty beyond the sort of formal constraints imposed by the criminal process. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 33 L. Ed. 2d 548, 571-572; 92 S. Ct. 2701 (1972)

4.    The bad actors prohibited to me the free exercise of religion one in one

instance and threatened to deny it to me in another.  They denied to me the

enjoyment of "those privileges long recognized . . . as essential to the orderly

pursuit of happiness by free men."

> "While this Court has not attempted to define with exactness the liberty guaranteed [by the Fourteenth Amendment], the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according

2

to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men." *Meyer* v. *Nebraska,* 262 U. S. 390, 399. In a Constitution for a free people, there can be no doubt that the meaning of "liberty" must be broad indeed. See, *e. g., Bolling* v. *Sharpe,* 347 U. S. 497, 499-500; *Stanley* v. *Illinois,* 405 U. S. 645. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 33 L. Ed. 2d 548, 572; 92 S. Ct. 2701 (1972)

5.     Everything filed to this date lends to the support that I have Article III

standing.  Nothing offered by the Appellees can support its denial.

The constitutional challenge cannot be answered by an argument that public assistance benefits are "a 'privilege' and not a 'right.'" *Shapiro* v. *Thompson,* 394 U. S. 618, 627 n. 6 (1969). Relevant constitutional restraints apply as much to the withdrawal of public assistance benefits as to disqualification for unemployment compensation, She*rbert* v. *Verner,* 374 U. S. 398 (1963); or to denial of a tax exemption, *Speiser* v. *Randall,* 357 U. S. 613 (1958); or to discharge from public employment, *Slochower* v. *Board of Higher Education,* 350 U. S. 551 (1956). The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be "condemned to suffer grievous loss," *Joint Anti-Fascist Refugee Committee* v. *McGrath,* 341 U. S. 123, 168 (1951) (Frankfurter, J., concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. Accordingly, as we said in *Cafeteria & Restaurant Workers Union* v. *McElroy,* 367 U. S. 886, 895 (1961), "consideration of what procedures due process may require under any given set of circumstances *must* begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." See also *Hannah* v. *Larche,* 363 U. S. 420, 440, 442 (1960).  Goldberg v. Kelly, 397 U.S. 254, 261-263; 25 L. Ed. 2d 287, 90 S. Ct. 1011 (1970)

**Intervention Was Briefed, Not Waived**

6.     The Appellees' citing of *EEOC v. Aramark Corp*., 208 F.3d 266, 268

(D.C. Cir. 2000), hint for the Circuit Court to affirm the district court's dismissal is

3

misplaced. The Circuit Court can vacate or reverse the district court's ruling

pursuant to any other grounds in its de novo review.

> Although we ultimately conclude that federal respondent's sentence was not "imposed in violation of law" and therefore that § 3742(a)(1) does not authorize an appeal in a case of this kind, it is familiar law that a court always has jurisdiction to determine its own jurisdiction. See *United States* v. *Mine Workers,* 330 U. S. 258, 291 (1947). In order to make that determination, it was necessary for the Ninth Circuit to address the merits. We therefore hold that appellate jurisdiction was proper. *United States v. Ruiz*, 536 U.S. 622, 628; 153 L. Ed. 2d 586, 122 S. Ct. 2450 (2002)

7.    My brief supports the elements of Rule 24(a)(2) whether quoted or not.

My brief said, page 3: "Is there error in law, clear error in fact, and/or abuse of

discretion in the district court dismissing Boulton's motion to <u>intervene</u> and

Pakosz's motion to join her?" . . . "There is <u>controversy</u> of whether Boulton's

passport was in fact, in a denied status anytime from March 12, 2021 until August

20, 2021; and a <u>controversy</u> of whether the 'delay' was due to legitimate

administrative processing or willful acts in hostility to Boulton because of her

request for religious accommodation and filing her complaint." (Emphasis added)

This "controversy" was before the district court and ignored.

8.    The next question briefed is whether "the district court abuse(d)

discretion by not adjudicating it by legitimate adversarial process rather than

merely relying on the contested declaration of Kristia Watkins and the U.S.

Attorney's efforts to lie to cover a lie?" Whether or not the district court sanctions

those 'lies to cover lies' under rule 11, they are claims of injury to me.  They

compound the reasons for the Circuit Court to vacate the order of March 25, 2022.

9.    Paragraph b. of my brief (page 4) raised the question of whether I

experienced injurious effects of unlawful conduct, with continued injury until my

incessant prodding terminated the unlawful restraint.  The answers rest upon the

entirety of the record.  Such as, ". . . whether Boulton experienced a denied

passport, and the wantonly false allegations of Watkins and Hair leading to many

new days of being denied a passport, warrants opportunity to amend the complaint,

resolve the dispute, and apply liability . . ."

10.   Paragraph c. of my brief to the Circuit Court (page 4) raises the

ramification of not reversing the dismissal order.  The questions go to Rule

24(a)(2) "claims an interest relating to the property or transaction that is the subject

of the action, and is so situated that disposing of the action may as a practical

matter impair or impede the movant's ability to protect its interest, unless existing

parties adequately represent that interest."  It is obvious that my case falls squarely

in this provision.  The district court itself justified its erroneous dismissal based

upon tying my claim to the issues of being adjudicated by the other complainants.

11.   It is not the hard-copy printing of "Rule 24(a)(2)" that warrants

"Intervention of Right."  Intervention is a right reserved to me in the Article III

court of law and equity.  The merits of my claim make the determination.  Not

building a verbatim-outline around Rule 24(a)(2) does not mean that I waived it.

Note that the words "intervener" and "intervention motion" are used in the first

paragraph of my brief. Intervention is "briefed" in the totality of my brief

12. As stated by the Appellees on page 12 of their response, "(1) this Court,

in its August 11, 2022 Order, identified the sole appealable issue for her (Doc.

#1958987 at 2); . . ." It is reasonable for me to presume that "appellant Boulton's

motion for intervention as of right" was understood to be the topic of my brief. As

the Circuit Court's order did not quote or cite the printed Rule 24(a)(2), I don't

waive intervention of right for not quoting it.

### Boulton Is <u>Not</u> An Unsuccessful or Failed Intervenor<br>But Is Rather A Party With A Right To Be Reinstated

13. The Appellees' quote of *Defs. Of Wildlife & Sierra Club*, 714 F.3d at

1328 does not apply to me. "[b]ecause a party *unsuccessfully* appealing a denial of

intervention is not a 'party,' it may not obtain review of any district court holding

other than the denial of intervention" (Response, p. 12, Emphasis added). I am

*successfully* appealing denial of my intervention. Likewise, I am not a "failed"

intervenor. I am rightly a Party to the ongoing litigation. Reversing the March 25,

2022 intervention dismissal order is the appropriate relief due me.

### Appellee Frivolously Misstates Facts To Mislead The Court

14. By misquote, the Appellees <u>wrongly</u> conclude that "[t]he district court

correctly determined Boulton would have lacked standing to intervene to pursue

6

her own equitable claims (Resp., p. 13, ¶ B.). The Appellees' statement demands
de novo review. The district court's memorandum regarding Sanctions (A. A-3, p.
37 / ECF 125, p. 15) invokes a damages claim that I have against the unnamed man
who tortured me in July 2020. It reveals the exemplary cruelty of the torturer,
since he was authorized to provide a "direct return passport" without my having to
deny my allegiance and dependence on Christ our Lord and Savior (ie. free
expression injury). Kristia Watkins invoked the need to adjudicate that matter
where in her Declaration of June 3, 2021, provided a false description, extrinsic
fraud, of what happened in July 2020 (A. B-24, p. 342, ¶ 3 / ECF 95-1, p. 2). I
briefed it (Boulton Brief, Doc. #1973237, p. 8, ¶ 13).[1] That is one among many
things that I briefed as warranting damages relief, nominal, exemplary, etc. The
actual statement of the district court erroneously tied my standing to merely
whether I eventually got a passport (A. A-3, p. 37 / ECF 125, p. 15). The district
court's statement about "no live claims for damages" relates to the district courts
opinion at the time of the still unresolved issue of whether the other "live"
Plaintiffs' case is moot for lack of damages. There remains to me a live damages
claim for which I am being erroneously excluded, which needs reversal of the
district court's order, and a mandate for discovery and complaint amendment.

---

[1] March 39 date should read March 9, 2021

15.  The Appellees mislead the Circuit Court, wrongly stating that I did not contest the district court's ruling regarding a lack of standing to pursue equitable relief relating to my passport (Resp., p. 13, ¶ B.1.).  The government leads the Court into a false conclusion by quoting out of context ("On August 20, 2021, . . ., I received my US Passport, valid for 10 years without submitting a social security number and without giving further information") (Quoting A. B-34, p. 387, ¶ 24. / ECF 109, p. 7).  Their isolated quote of paragraph 24, excluding the previous 23 and following 10 paragraphs, perverts the context (*Id.*, pp. 381-390 / ECF 109-0, pp. 1-10, Boulton-Response-to-Status-Report).  The 12 exhibits submitted with that document spell out the severity of unlawful acts and deceptive statements of Watkins and Hair (A. C-1 through C-12, pp. 418-460 / ECFs 109-1 through 109-12).  The correct context exposes the perjury of Kristia Watkins and Attorney Christopher Hair that related to **a particular period of time** between the filing of my passport renewal application on March 9, 2021, and August 10, 2021.  It wastes the Court's time, my word count, my printing and labor costs, having to rabbit-chase and append the proper context of my response to their Status Report. The Circuit Court needs to scrutinize those documents.

### The Appellee Endorses 'Denial Under the Guise of Delay' and Prolonged Injury as Their Justification To Nullify My Cause of Action

16.  The Appellees' arbitrary classification for 'Party' status displays the injustice of the district court's denial of my intervention (Resp. p. 14, ¶ last).  It

8

wrongly classifies my claims to have "commenced" with the district court's finally

getting around to commenting on the matter on March 25, 2022. My claim

commenced on March 12, 2021, at the very latest when my daily injury

commenced (A. C-1, pp. 418-420 / ECF 109-1, pp. 1-3). I registered my claim by

my intervenor motion filing in the district court on May 21, 2021 (A. C-13-14, pp.

461-467 / ECFs 94, 94-1). New claims or counts are justified by the unlawful acts

repeated on March 30 and April 2, 2021. New counts of unlawful denial as well as

conspiracy to deny me my constitutional rights commenced June 3rd and 4th of

2021 by the perjury and perpetuation of the unlawful denial of my passport by

Kristia Watkins. A new count commenced on June 7th. That was the 90-day

deadline by which they told me they demand that I abandon my free exercise of

religion or be required to pay another fee to apply for the next denial. The

Appellees' allegation that my "equitable claims became moot while [my] motion to

intervene was pending, and she lost standing to pursue her won equitable relief

post-intervention" are flat wrong.

17.   The equitable relief that remains due me is based upon the demand in my

complaint, "5. Such other and further relief as the Court deems proper." (A. C-14,

p. 466 / ECF 94-1, p. 4) That phrase left room for claims that would be discovered

in the ordinary course of litigation, or as a result of the government's repeated

injury to me after I filed suit as intervenor.

> In appraising the sufficiency of the complaint, we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 46 (1957).

18.   That *Conley v. Gibson* rule was erroneously breached by the district court.

My brief argument cited substantial case law to support my position and the

Appellee cannot contradict that support and waives opportunity to do so.

### Injunctive Relief Is Warranted By The Appellees' Demonstrated Propensity To Violate the Law

19.   The record shows that injunctive relief is warranted.

> ""The case may nevertheless be moot if the defendant can demonstrate that "there is no reasonable expectation that the wrong will be repeated." **The burden is a heavy one**. *United States v. W. T. Grant Co.*, 345 U.S. 629, 97 L. Ed. 2d 1303, 73 S. Ct. 894 (1953) (Emphasis added)

20.   The Appellees offer the proof that it is "more than the mere possibility"

that injunctive relief is needed.  It is their continuation of unlawful conduct and lies

even after substantive notice.  The evidentiary exhibits on the record show

Defendants'-Appellees' willingness to repeat the offenses despite the August 28,

2028 ruling (*Carmichael, et al. v. Pompeo, et al.*, 486 F. Supp. 3d 360; A. B-9, pp.

235-258 / ECF 45).  My March 9, 2021, plain religious accommodation request

was submitted seven months after that ruling (A. C-3, pp. 424-429 / ECF 109-3).

Several days before my request for accommodation, the U.S. Attorney promised

the district court promised that his government client was granting accommodation

10

to Carmichael, Lewis and Pakosz if they ever filed a new application (A. B-23, pp.

239-240 / ECF 80, Status Report).[2]   It was a <u>week after</u> that promise that they

denied my request for religious accommodation (C-1, pp. 418-420 / ECF 109-1).  I

sent a copy of that Def. Status Report to the adjudicator who had just denied my

application and request for accommodation (A. C-4, pp. 430-434 / ECF 109-3).

Rather than take notice of the published ruling (*Carmichael et al. v. Pompeo, et al.*

486 F. Supp.3d 360 (D.D.C.2020), and the promise that their Department filed in

that case (A. B-23, pp. 239-240 / ECF 80), they repeated and reiterated their

unlawful denial of my passport.  "Along with its power to hear the case, the court's

power to grant injunctive relief survives discontinuance of the illegal conduct."

*Hecht Co.* v. *Bowles, supra; Goshen Mfg. Co.* v. *Myers Mfg. Co.,* 242 U. S. 202

(1916).   Therefore, injunctive relief raised in my complaint was abusively

excluded from consideration and provision by the district court's erroneous denial

of my intervention as of right where I demanded:

> 1. An order in mandamus directing Defendants to issue a passport to
> Boulton;
> 2. A declaration that Defendants are in violation of law in refusing to
> issue a passport to a person who refuses to provide a Social Security
> Number on a religious objection;
> 3. A permanent injunction prohibiting Defendants, and each of them,
> from refusing to issue a passport to any person who refuses to provide a
> Social Security Number on a religious objection;
> 4. Boulton's attorney's fees and costs of suit herein;

---

[2] The district court eventually ordered the Defendants (Appellees) to issue a passport to Lewis (Minute Order, May 25, 2022) without a finding of fact or conclusions of law over a year after the government's status report (ECF 80), notwithstanding that Lewis refused as a matter of law to provide a new application and photograph.

5. Such other and further relief as the Court deems proper."
(A. C-14, p. 467 / ECF 109-12).

**Cases Cited By The Appellees Are Off Point or Support Boulton's Case**

21.    The cases cited by the Appellees are distinguished from mine, showing that my case is not moot.  One of those cases was filed <u>after</u> the plaintiff's situation had actually improved, *Adv. Mgmt. Tech., Inc. v. Federal Aviation Admin.*, 211 F.3d 633, 636 (D.C. Cir. 2000).  In that decision, the D.C. Circuit stated a maxim that supports my position.  ""Standing is assessed "at the time the action commences," *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, _____ U.S. _____ , 120 S.Ct. 693, 709-710 (2000), i.e., in this case, at the time AMTI sought relief from an Article III court, when AMTI held the more lucrative second contract."  In distinction from those cases, I had "standing" at the time the suit was commenced on May 21, 2021.

22.    The unlawful injury to my free expression of religion was perpetrated again by Kristia Watkins on June 3, 2021, after I had filed suit by motion to intervene as of right.  There was <u>causation</u> in that it was the unlawful conduct of the Defendants-Appellees' that injured me.  It had <u>redressability</u> that was not limited to merely the issuance of a passport. I demanded

12

## The Appellees Have Not Met the Heavy Burden
## of the Party Asserting Mootness

23.   Tracking the elements described in *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, the district court's order demands reversal. The Defendant-Appellees have demonstrated that they feel the freedom to trounce on property and liberty rights on whomever they will, without regard for the law, and continue the injury until such time as a court takes action.  It is the most vulnerable who will continue to suffer until such time as the behavior is exposed. Many more than me have been injured this way, whose record of injuries are buried in the Defendants'-Appellees' vaults.  Like me, they likely don't have the resources to redress injuries by paying a professional.  I may have the *chutzpah* to go it alone while not affording or finding professional help, but the weight of the task compounds the effects of the egregious injuries.  The Defendants-Appellees still pressed my injury as far as they could even in the face of my filing suit.

> A defendant's voluntary cessation of a challenged practice ordinarily does not deprive a federal court of its power to determine the legality of the practice. *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289. If it did, courts would be compelled to leave the defendant free to return to its old ways. Thus, the standard for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. United States v. Concentrated Phosphate Export Assn., Inc., 393 U.S. 199, 203. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness. Ibid. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000)

13

**Appellees Falsely Claim Boulton's Claim Included "No" Damages**

24.    Contrary to the Appellees' assertion, **I do not admit that my "motion to intervene to pursue her own claims included no claims for damages"** (Resp. p. 15).  The cited affidavit explains why I did not add all the fuel to the fire that justifies my suit in the district court.  That does not preclude damages due me as a Party.  My mistaken belief that the March 12, 2020, denial of free exercise was not absolutely tied to the denial of my free exercise of religion in July, 2020, was corrected by the filing of the Declaration of Kristia Watkins.  I could not escape the tie once Kristia Watkins made a false statement about it in her declaration (A. C-11, p. 456, ¶3. / ECF 109-11).  My complaint left room to amend to get complete relief for my post-filing injuries of Kristia Watkins and to relate back the wrongs of the unnamed torturer of July 2020 (A. C-14, pp. 464-467 / ECF 109-12).

**The Appellee Does Not Show That Boulton Is Not an Intervenor As of Right**

25.    Prong 1 - I have a personal interest my own case, combined with its relationship to the passport denials of Carmichael, Lewis, and Pakosz.  They are those with whom I have close religious fellowship, before the filing of my complaint, whose passports have likewise been unlawfully denied.  We cannot procedurally file as a class until such time as we find a lawyer certified to represent our class.  Thus, I must represent myself in bringing to the court the unlawful injuries upon myself which are in lock-step with those perpetrated upon

14

Carmichael, Lewis and Pakosz.   <u>My interest is no greater or less than the clear</u>

<u>public interest inherent in having the illegality of their practices settled, and it</u>

<u>militates against a mootness conclusion.</u>

> Both sides agree to the abstract proposition that voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i. e.,* does not make the case moot. *United States* v. *Trans-Missouri Freight Assn.,* 166 U. S. 290 (1897); *Walling* v. *Helmerich & Payne, Inc.,* 323 U. S. 37 (1944); **Hecht Co. v. Bowles, 321 U.S. 321 (1944).**  A controversy may remain to be settled in such circumstances, *United States* v. *Aluminum Co. of America,* 148 F. 2d 416, 448 (1945), *e. g.,* a dispute over the legality of the challenged practices. *Walling* v. *Helmerich & Payne, Inc.,* supra; *Carpenters Union* v. *Labor Board,* 341 U. S. 707, 715 (1951). The defendant is free to return to his old ways. This, together with a **public interest** in having the legality of the practices settled, militates against a mootness conclusion. *United States* v. *Trans-Missouri Freight Assn., supra,* at 309, 310. **For to say that the case has become moot means that the defendant is entitled to a dismissal as a matter of right,** *Labor Board* v. *General Motors Corp.,* 179 F. 2d 221 (1950). The courts have rightly refused to grant defendants such a powerful weapon against public law enforcement.5  **United States v. W. T. Grant Co.,** 345 U.S. 629, 632; 97 L. Ed. 2d 1303, 73 S. Ct. 894 (1953)

26.   We each demand the district court to determine the damages owed to us

for our identical and contemporaneous unlawful detention, false imprisonment,

*writ ne exeat republica* without due process and contrary to the facts and the law as

applied to it.  We have a right to judicial remedy and complete relief whereas the

"defendant" is not entitled to a dismissal as a matter of right. *Id.*

### The Appellees' Argument Regarding Timeliness Is Frivolous, and in Stark Contrast to the Substance of the Record

27.    Rightly said, "A nonparty must timely move for intervention once it becomes clear that failure to intervene would jeopardize her interest in the action" (citing *Harrington,* 863 F.3d at 872, among others on page 18 of their Response). Nowhere do the Appellees substantiate that my intervention of right unduly disrupted litigation, especially to the unfair detriment of the existing parties as they cite referencing *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014). The Appellees mention how "the amount of time elapsed alone is not determinative" (Response p. 18). It is especially so in this instance. I absolutely dispute "the lateness of the hour" contrary to the assertion by the Respondent. It was not a statement that I was required to make in my brief to this court (Resp., p. 19, 1st para.). The record disputes it, showing the prejudicial detriment to the Parties in the district court's abuse of discretion silently denying discovery due process.

28.    Contrary to the Appellees' assertion, it is not "separate discovery" but the same discovery still owed to each Party. It is the same unlawful conduct of the same perpetrators that needs to be exposed by discovery as a necessary step to reach complete relief for the many injured, of which I am one.

29.    For all Parties, complaint amendment is necessary for the naming of wrongdoers in their personal capacity who have been serendipitously discovered.

16

30. As far as "*Interests*" are shown, it is clear by all my filings and the conduct of the Appellees' before and during litigation, my claim is not merely "solely for ideological, economic, or precedential reasons; that the would-be intervenor merely *prefers* one outcome to the other." It is rather that, as stated and quoted by the Appellees' Response (p. 21, 2ⁿᵈ para.), "This Court has recognized an interest "among 'persons who allege that they have suffered injury from the same or very similar wrongful acts as those complained of by the original plaintiffs.'" *Id.* (quoting *Foster*, 655 F.2d at 1325)."

**Injuries Discovered During Litigation Do Not Ban New Causes**

31. Injuries which occur or are discovered during litigation are not banned from inclusion as a new cause or a new count. The Respondents' speculations of the future of the ongoing litigation (Resp. pp. 21-23) cannot be persuasive. The conclusory statement closing on page is 23 false. My case is present and actual, and deserves amendment for things exposed by the Appellees during litigation.

> In opposing the suggestion of mootness, appellants rely on *Church of Scientology v. United States,* 485 F.2d 313 (9th Cir. 1973), contending that there is still a justiciable controversy because "under substantial authority the appellant cannot be deprived of a determination of the merits simply because the appellees want to take a 'walk' from the case and hide their misconduct." *United States v. Ford*, 650 F.2d 1141, 1143 (1981)

17

**The Appellees' Impairment Remarks Support Boulton's Intervention of Right**

32.    The Appellees' speculate against themselves in their discussion on impairment on page 22.  They rest the probability of my success on what they speculate as non-success by the remaining Plaintiffs in the case, Carmichael and Lewis.  The government admits as a rule that "it is not enough to deny intervention under 24(a)(2) because applicants may vindicate their interest is some later… litigation[,]."  They then mis-attempt to caveat by an off-point case about parties who have settled (Resp. p. 23, ¶ 3rd).

33.    The Appellees then misrepresent my motion to intervene.  "Boulton asks for an opportunity to bring her own case from the ground-up."  Should I have elected to file a separate suit, I would have had to give the district court notice of the similarity with the Carmichael v. Pompeo case, and impossibly argue why my case would be distinguished from theirs in order to keep it separate.

34.  They correctly acknowledge "the risk of adverse precedent from Carmichael and Lewis's case" (Resp. p. 24, ¶ 1st).  My interests in the proper interpretation of 22 U.S.C. § 2721, Impermissible Basis of Denying A Passport is erroneously applied by the district court.  Fed. R. Civ. P. 54(b) says, "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of

18

judgment adjudicating all the claims and all the parties' rights and liabilities." The

need for the district court to reverse itself, before the suit is final, supports my

interest in the suit according to *Neuse.*

> "To agree that the ultimate question is the meaning of a federal statute,
> however, does not mean that the state banking commissioner has no
> "interest" in how that question is answered. For on this interpretation
> rests a large part of the advancement of the Congressional policy of
> competitive equality between state and national banks. Where Congress
> has been most deliberate in promoting a policy of equal opportunity by
> adopting state law on the subject, we think the courts may not be
> insensitive to the request by the official charged with administering the
> state's banking laws to appear as a party to urge the construction of the
> federal statute that he claims is necessary to secure the state's interests,
> and hence the congressional objectives." *Nuesse v. Camp*, 385 F.2d 694,
> 701 (D.C. Cir. 1967)

35. The Congress is presumed to have intended statute, 22 U.S.C. § 2721, to

preclude injury to my free expression of religion and having to file suit as a

procedure to obtain a passport. Congress's most deliberate protection positively

enacted in that law, and the penalties related to the violation of it, ought to make

the court sensitive to my request to vindicate my rights and render corrective

measures upon the perpetrators. Like Carmichael, Lewis, Hollingsworth and

Pakosz, I have an interest as to how the statute 22 U.S.C. § 2721 is interpreted. It

is a 'passport' statute protecting my rights under the First, Fifth and Ninth

Amendments, which law of the United States was violated, which makes the

perpetrators subject to the penalties of violating 5 U.S.C. 552a (civil injury), 42

19

U.S.C. § 408 (felony warranting exemplary damages), which was accomplished by

conspiracy. The stare decisis effect of the district court's ruling of August 28,

2020, as well as mootness, among other things, is not yet final in that litigation.

36. The Appellees' other case quote is dissimilar where "Resolution of

ManaSota-88's litigation in its favor will not produce any immediate effect on FCG

. . . " *Manasota-88, Inc. v. Tidwell,* 896 F.2d 1318, 1323 (11th Cir. 1990). The on-

going litigation in my situation has immediate – negative - effects. *Id* at 1323.

37. The 11th Circuit found that bringing one's own claims into the case for

adjudication at the same time as those of the Plaintiffs was appropriate.

> "Appellant's interests are sufficient to meet this standard, as his interests
> are practically indistinguishable from those of the plaintiffs. The district
> court erroneously viewed appellant's request to intervene as a request to
> intervene into the plaintiffs' claims. Appellant was seeking instead to
> bring his own claims into the case for adjudication at the same time as
> those of the plaintiffs. This holding comports with the District of
> Columbia circuit's interpretation of the interest requirement of Rule 24:
> "[T]he `interest' test is primarily a practical guide to disposing of lawsuits
> by involving as many apparently concerned persons as is compatible with
> efficiency and due process." *Worlds v. Dep't of Health & Rehab. Servs.,*
> 929 F.2d 591, 594 (11th Cir. 1991)

**Appellee Speculations Are Unpersuasive and Inappropriate**

38. The government makes a false conclusive statement that is speculative

regarding the *stare decisis* effect on my independent claims (Resp. p. 24, ¶ 2nd).

They misrepresent the litigation, incorrectly stating, "Carmichael (et al.) brought

no personal capacity claims." That matter is currently being litigated in the district court (D.D.C. 1:19-cv-02316, ECFs 140, 143, 144, 148).

39.   The Appellees speculation of my litigation tactic is not their concern (p. 25, ¶2nd, see fn. 7).  They speculate the difficulty of intervention versus separate litigation (*Id.*, p. 26, ¶1st).  They speculate the likeliness of discovery as if they know the mind of Judge Contreras.  Their suggestion that denial of my intervention of right is somehow merciful is unwelcomed.

40.   They cannot persuade the Court with their speculation of what they believe someone might 'represent' in my favor and its impact on my chances for complete relief.  They wrongly assert that utilizing service of process by someone in the case who has been granted CM-ECF constitutes "representation" of my interests.  It clearly in the interest of economy and efficiency that I availed myself of filing through the Party who had ECF permission, a process endorsed by this court in its August 11, 2022 order (22-5143, Doc. 1958987, p. 2, ¶ 2nd).  The Appellees proposal that I employ a non-lawyer is also inappropriate, "A pro se litigant may not represent another person in court." *Id.*  My interests to protect my own liberty, property, remedy, and complete relief cannot be represented by another, just because the malefactor Defendant Appellees happen to be wantonly injuring myriad Americans who may or may not be representing themselves.

21

41.  Even if we can find a lawyer representative for a class action, the Rules

(FRCP Rule 23) supports my liberty to represent my own interests as a Party even

should I forgo a particular grant of relief ordered for 99% of the other hundred

fellow litigants.

## Conclusion

42.  I have not waived my appeal. The denial of my motion to intervene

must be reversed.  Those things that I briefed show that the district court's denial

of my intervention as of right is erroneous as a matter of law, by clear error as a

matter of the facts, and an abuse by the district court under the color of discretion,

whereby the Circuit Court is duty bound to reverse the district court order

regarding me, remand my case to the district court with orders to commence

discovery according to Rules as a means to the end of justice and preservation of

law.  If the district court's decision is not vacated or reversed my day in court is

henceforth denied to me on every related fact, law, injury, etceteras.  I am a

necessary Party to persuade the district court to do the right thing in my suit that is

wholly situated with my fellow Plaintiff Parties.

Michelle Boulton
8491 Hospital Dr., #178
Douglasville, Georgia 30134-2412

22

## CERTIFICATE OF CONFORMANCE TO THE RULES

I, Michelle Boulton, certify that the "Appellant Michelle Boulton's Reply Brief conforms to the rules regarding word limits, having only 6,112 words, excluding cover sheet, tables, and signature.

I certify under the penalty of perjury under the laws of the United States of America, that the foregoing is true.

ss: _____  Date Dec 23 2022

Michelle Boulton
8491 Hospital Dr., #178
Douglasville, Georgia 30134-2412

A-1

## CERTIFICATE OF SERVICE

I, Michelle Boulton, certify that I served to the U.S. Court of Appeals, U.S. Circuit Court, District of Columbia, in the case of *Pakosz, et al., v. Blinken, et al.*, case no. 22-5143, the Appellants' "Appellant Michelle Boulton's Reply Brief." I served the court and parties at:

Clerk, United States Court of Appeals
333 Constitution Avenue, N.W.
Washington, DC 20001 (Priority Mail)

David James Byerley
U.S. Department of Justice
(DOJ) Civil Division, Office of Immigration Litigation
PO Box 868, Ben Franklin Station
Washington, DC 20044-0868  (Priority Mail)

United States Attorney
United States Attorney's Office
c/o Stephen DeGenaro
601 D. Street, N.W.
Washington, D.C. 20530 (Priority Mail)

William Mitchell Pakosz c/o Rick Hollingsworth
14930 Greenbrier Lane
Homer Glen, Illinois  60491  (Priority Mail)

Michelle Boulton
8491 Hospital Dr., #178
Douglasville, Georgia  30134-2412 (Hand delivery)

I certify under the penalty of perjury under the laws of the United States of America, that the foregoing is true.

Michelle Boulton
8491 Hospital Dr., #178
Douglasville, Georgia  30134-2412

Dec 23 2022
Date



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

DEC 2 7 2022

RECEIVED

RECEIVED
Mail Room

DEC 2 7 2022

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia